MATTER OF T——

In DEPORTATION Proceedings

A-11207333

*Decided by Board November 25, 1959*

Deportability—Charge under section 241(a)(1) (invalid visa) not sustained in absence of fraud sufficient to sustain charge under section 241(c).

Where evidence of fraud in marriage to United States citizen was found insufficient to support respondent's deportation under section 241(c) of the Immigration and Nationality Act, deportation on invalid visa charge under section 241(a)(1) is also precluded when predicated upon same evidence of fraudulent marriage.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Inadmissible at time of entry, not nonquota immigrant.

## BEFORE THE BOARD

**Discussion:** The case comes forward on appeal from the order of the special inquiry officer dated August 5, 1959, denying the motion to reopen and reconsider the order entered by the special inquiry officer on June 1, 1959, directing that the respondent be deported on the charge stated above.

The record relates to a native and citizen of Italy, 36 years old, male, who last entered the United States at the port of New York on June 26, 1957, and was admitted upon presentation of a nonquota visa. This nonquota visa was issued at the American Consulate General at Palermo, Italy, on March 28, 1957, and was predicated upon a visa petition approved on July 18, 1956, executed by the petitioner's citizen wife whom he had married at Licata, Italy, on May 12, 1956. The respondent's marriage was judicially annulled at Baltimore, Maryland, on October 14, 1958, upon a suit instituted by the citizen wife. The respondent did not file an answer in the annulment proceedings and a decree *pro confesso* was entered.

There has been made a part of the present proceedings a record of a hearing and order entered on March 20, 1959, by a special inquiry officer against this same respondent. The order to show cause in

that case was issued on January 23, 1959, and charged deportability under sections 241(a)(2) and 241(c) of the Immigration and Nationality Act on the ground that the respondent was an alien in the United States in violation thereof because he was an alien who entered contrary to the provisions of section 212(a)(19) of the said act with an immigrant visa which was procured by fraud on the basis of a marriage entered into less than 2 years prior to such entry, which marriage was judicially annulled or terminated within 2 years subsequent to entry. After hearing the testimony of the respondent (who was the only witness in the case), and after examining the annulment decree which did not show the grounds for said annulment, the special inquiry officer concluded that the evidence satisfactorily established that the respondent entered into the marriage in good faith and that it was not contracted for the purpose of evading any provision of the immigration laws. Accordingly, he ordered the proceedings terminated.

No appeal was taken by the Service from this decision of the special inquiry officer, but thereafter, on March 28, 1959, a new order to show cause was issued charging the respondent to be subject to deportation under section 241(a)(1) of the Immigration and Nationality Act, in that, at time of entry, he was within one or more of the classes of aliens excludable by law existing at the time of such entry, to wit, aliens who are not nonquota immigrants as specified in the immigrant visa, under section 211(a)(3) of the act. Actually, the respondent was in physical possession of a valid nonquota visa. Therefore, in order to sustain the charge, the special inquiry officer was required to find the nonquota visa invalid for the reason that the respondent was not a *bona fide* nonquota immigrant as specified in his immigrant visa. This he did by relying largely upon the uncontested allegations and testimony in the annulment proceedings, the report of the auditor and master, and the decree of annulment entered in the uncontested action. The special inquiry officer found that insofar as respondent was concerned this was a marriage in name only, fraudulently entered into by respondent for the purpose of procuring his entry into the United States as a nonquota immigrant and that the annulment for lack of contractual intention clearly rendered the marriage contract void *ab initio;* hence, respondent was excludable at time of entry under section 211(a)(3) of the Immigration and Nationality Act as not a nonquota immigrant as specified in his immigrant visa.

The special inquiry officer therefore was, in essence, finding that the nonquota visa was not valid because it was procured by fraud for the reason that the marriage was entered into solely to obtain nonquota status and without the intention of creating a *bona fide* husband-wife relationship. But this reasoning prevails only where

neither of the parties intended to enter into a *bona fide* marriage relationship.[1] In the instant case, it is clear that the wife of the respondent intended a *bona fide* relationship and that had she not obtained a judicial termination of the marriage, the marriage would have been a valid and subsisting one. The propriety of using a charge predicated on section 241(a)(1) in a situation which is clearly encompassed by section 241(c) of the Immigration and Nationality Act appears to be doubtful inasmuch as the latter charge is specifically applicable to the facts in the instant case.

The 1952 revision of the immigration and nationality laws was designed to fortify the sanctions against those who resorted to fraudulent marriage in order to defeat the quota restrictions.[2] If it appears that the alien contracted the marriage in good faith, with intention to fulfill his marital obligations, the subsequent failure or dissolution of the union will not subject him to deportation.[3] Moreover, the vitiating fraud must relate to the entry into the United States. Annulment of the marriage for fraud will not entail deportation if it is found that the fraud did not relate to obtaining immigration benefits.[4] Whether the marriage was consummated by intercourse is a relevant, but not a decisive, consideration in appraising the alien's good faith.[5] A court finding of fraud is not conclusive in the deportation proceedings. Under the terms of the statute the respondent can avoid deportation by establishing that the annulment or divorce actually resulted from incompatibility or some other cause unrelated to evasion of the immigration laws.[6]

It may thus be seen that Congress had provided a specific section of the immigration and nationality law to deal with fraudulent marriages in order to obtain entry into the United States as non-quota immigrants. The immigration law has specifically provided for deportation upon annulment of these so-called "gigolo" marriages since 1937.[7] Since the immigration law has for such a long period contained this specific ground of deportability based upon a

[1] Cf. *Matter of M——*, A-10335093, Int. Dec. No. 968.

[2] See Senate Report No. 1137, 82d Cong., 2d Sess., pp. 22-23: "In section 241(c), an attempt is made to prevent aliens from gaining admission to the United States through fraudulent marriages in cases where they could not otherwise gain admission or would be faced with long years of waiting. It is provided that an alien shall be deported as having procured a visa or other documentation by fraud if, at any time, the alien obtained entry with an immigrant visa or other documentation procured on the basis of a marriage entered into less than 2 years prior to such entry of the alien, if within 2 years subsequent to any entry of the alien the marriage is judicially annulled or terminated * * *."

[3] *Matter of V——*, 7 I. & N. Dec. 460: *Matter of T——*, 7 I. & N. Dec. 417.

[4] *Karayannis* v. *Brownell*, 248 F.2d 80, 251 F.2d 882.

[5] *Matter of M——*, 7 I. & N. Dec. 601.

[6] *Karayannis* v. *Brownell, supra.*

[7] Section 3, Act of May 14, 1937; 50 Stat. 164-5.

marriage annulled for fraud, a charge under section 241(c) would appear to be appropriate rather than the more general charge used in the instant case under section 241(a)(1). The basic premise of an expulsion under section 241(c) is the procurement of a visa and entry through deception.[8] The charge of deportation on the ground of not nonquota as specified in the visa is usually coupled with an allegation that such visa was obtained through fraud or where the marriage was otherwise void *ab initio*.[9] Even in the case of an annulment of the marriage of parties because they were uncle and niece, it was found that the charge based on the Act of May 14, 1937 was not supported because the element of fraud was not present in the marriage; and the theory that respondent's marriage was not recognized as valid in New York and that she was not legally the wife of a United States citizen at the time of her entry and, therefore, not entitled to admission on a nonquota basis was not sustained despite the annulment on the ground that the marriage which had been performed in Rumania was valid there and should be regarded as merely voidable and not void *ab initio*.[10]

Marriages induced by fraud, like contracts and conveyances similarly induced, are binding on the party guilty of the fraud unless the victim of the fraud exercises his option of having the marriage annulled. The modern cases require a judicial annulment, and the mere election of the victim to treat the marriage as void is not sufficient.[11] The doctrine that a marriage procured by fraud is annulled and is effaced as if it had never been, has, in practice, been limited because, as has been pointed out, the doctrine of "relation back" is a fiction of law adopted by the courts solely for the purposes of justice.[12] This fiction of "relation back" is sometimes given effect and sometimes ignored, as the purposes of justice are deemed to require.[13] The "relation back" doctrine of annulment was fashioned to do substantial justice as between the parties to a voidable marriage. It is a mere legal fiction which has an appeal when used as a device for achieving that purpose. The test for determining the applicability of the doctrine is whether it effects a result which conforms to the sanctions of sound policy and justice as between the immediate parties, their property, and the rights of offspring. Whatever may be said for the fiction of "relation back" as a general principle in annulment cases, it must be deemed to apply only where it promotes the purposes for which it was intended.[14]

---

8 Gordon and Rosenfield, *Immigration Law and Procedure*, p. 428.
9 *Matter of R——*, 4 I. & N. Dec. 345.
10 *Matter of M——*, 3 I. & N. Dec. 25.
11 Madden, *On Persons and Domestic Relations*, p. 21.
12 *Sleicher* v. *Sleicher*, 251 N.Y. 366.
13 *Schaeffer* v. *Schaeffer*, 158 N.Y.S.2d 204.
14 *Sefton* v. *Sefton*, 291 P. 2d 439 (Cal., 1955).

The instant annulment was procured in Maryland. However, we were unable to find any specific Maryland cases as to whether such marriages are declared void as to the date of decree or relate back so as to render the marriage void *ab initio*.[15] However, it is interesting to note that in the neighboring District of Columbia a decree of annulment of a marriage, the consent to which of either party has been procured by force or fraud, is void from the time its nullity is declared by decree, as distinguished from those cases in which the marriage is void *ab initio*.[16]

On the basis of the discussion set forth above, and in view of the fact that a prior proceeding, predicated on section 241(c) of the Immigration and Nationality Act on a charge of visa procured by fraud on the basis of a marriage entered into less than 2 years prior to such entry which marriage was judicially annulled within 2 years subsequent to entry, was terminated, we are not prepared to sustain the present charge unless it is predicated upon a showing of fraud necessary to sustain the section 241(c) ground. We note that the present proceeding contains the full complaint and findings in the annulment matter which were not present in the previous proceedings. We also note that the former wife was not called as a witness in either proceeding. We do not speculate whether such evidence would be sufficient to sustain a charge under section 241(c) of the Immigration and Nationality Act. In the absence of evidence of fraud sufficient to sustain a charge under section 241(c), we will not sustain a section 241(a) charge which is bottomed on the same fraud and deception.

**Order:** It is ordered that the proceedings be terminated.

---

[15] *Osborne* v. *Osborne*, 134 A. 2d 436, decided in the Municipal Court of Appeals, D.C., merely holds an annulment may be granted for fraud going to the essence of the marriage relationship.

[16] *Matter of R——*, 4 I. & N. Dec. 345, referring to section 30–103(14:3) of the Code of the District of Columbia.

497