## MATTER OF SIMICEVIC

### In VISA PETITION Proceedings

### A–11904545

*Decided by Board September 3, 1963*

Since the stepparent-stepchild relationship created by virtue of the petitioner's
marriage in 1952 to the father of the beneficiary (latter then 13 years of age)
was discontinued and brought to an end when said marriage was legally ter-
minated by divorce in 1057 with custody of the beneficiary awarded the father,
and both petitioner and father have subsequently remarried other persons,
the petitioner is not now the "parent" of the beneficiary within the meaning
of section 101(b)(2), Immigration and Nationality Act, and, therefore, ineli-
gible to petition for third preference quota status on his behalf as her stepson.
[*Matter of C—*, 8 I. & N. Dec. 592, distinguished.]

The District Director of Immigration and Naturalization at Los
Angeles, California on June 17, 1963 entered an order denying the
visa petition filed by the petitioner on January 7, 1963 to accord the
beneficiary third preference status as provided in section 203(a)(3)
of the Immigration and Nationality Act. The case has been certified
to this Board for final decision in accordance with the applicable
regulations. The petitioner in her petition to classify status of an
alien for the issuance of an immigrant visa, which was subscribed
and sworn to at San Pedro, California on January 4, 1963, deposed
that she is a native and citizen of Yugoslavia, lawfully admitted to
the United States for permanent residence at Chicago, Illinois on
April 6, 1960.

The beneficiary was born in Yugoslavia on February 15, 1939. He
has been living in Canada since October 1962. On examination of the
record we find that the beneficiary was 13 years of age when the peti-
tioner married the beneficiary's father on July 31, 1952. The peti-
tioner separated from the beneficiary's father on October 27, 1956 and
their marriage was terminated by divorce on December 3, 1957, at
which time custody of the beneficiary was awarded to his father with
whom he has since resided. The petitioner testified that no issue was
born from her marriage to the beneficiary's father. The petitioner

363

testified that both she and the beneficiary's father had each remarried on two occasions since being divorced on December 3, 1957.

Under section 101(b)(1)(B) of the Immigration and Nationality Act the term "child" means an unmarried person under 21 years of age who is a stepchild, whether or not born out of wedlock, provided the child has not reached the age of 18 years at the time the marriage creating the status of stepchild occurred. Section 101(b)(2) of the Act defines the term "parent," "father," or "mother" as meaning a parent, father, or mother only where the relationship exists by reason of any of the circumstances set forth in section 101(b)(1) of the Act. Hence, under the pertinent statutes the petitioner and the beneficiary acquired the status of "mother" and "child," respectively, when the petitioner married the beneficiary's father on July 31, 1952.

The District Director's conclusion that the petitioner was not the beneficiary's parent or mother at the time she executed and filed on his behalf the petition to accord him preference quota status under section 203 of the Immigration and Nationality Act and his reasons therefor are concurred in by this Board. In *Matter of C—*, 8 I. & N. Dec. 592, this Board held that a married stepdaughter, 45 years of age, was eligible on petition for fourth preference quota status as a "daughter" within the meaning of section 203(a)(4) of the Act, as amended, provided there existed an original relationship of "stepparent" and "stepchild" validly created in accordance with the provisions of section 101(b)(1)(B) of the Act, as amended. In *Matter of C—*, *supra*, the marriage between the beneficiary's mother and the petitioning stepfather was in existence when the petition was filed on behalf of the beneficiary and at the time of the Board's decision on March 4, 1960. In other words, the relationship established by reason of section 101(b)(1)(B) of the Act does not cease to exist when the stepchild marries or reaches 21 years of age provided the marriage that created the status of stepchild is in existence. In *Matter of C—*, *supra*, there was a reuniting of a family unit that had been in existence since the beneficiary was seven years old.

The facts in the instant case are readily distinguishable from those present in *Matter of C—*, *supra*. In the instant case the evidence establishes that the relationship between the petitioner and the beneficiary lapsed on October 27, 1956 when the petitioner separated from the beneficiary's father. In this connection, it is noted that the petitioner in her application for an immigrant visa, subscribed and sworn to before a United States Consular officer at Oslo, Norway on March 31, 1960, deposed she had been living and employed in Oslo, Norway since 1956. The relationship ceased to exist in fact on December 3, 1957 when the petitioner's marriage to the beneficiary's father was dissolved pursuant to a decree of divorce. The relationship between the peti-

tioner and beneficiary that came into being by reason of the petitioner's marriage to the beneficiary's father in 1952 was one of "affinity," as distinguished from consanguinity.

Consanguinity or blood relationship is incapable of dissolution. "Affinity" is generally defined to be the relationship by marriage between a husband and his wife's blood relatives, or between a wife and her husband's blood relatives. Hence, it has been held that upon dissolution of a childless marriage by divorce and remarriage of wife or husband, "affinity" between divorced husband and wife's children of a former marriage is extinguished. When the marriage is dissolved, and there are no children of the marriage, society is not served or benefited by the continuance of the fiction when the cause has ceased (cf. *Brotherhood of Locomotive Firemen and Enginemen* v. *Hogan*, et al. and authorities cited, 5 F. Supp. 598).

The petitioner herein has testified that no issue resulted from her marriage to the beneficiary's father and that she and the beneficiary's father have each remarried twice since their divorce in December 1957. The evidence of record shows the beneficiary's father was awarded custody of him at the time of the aforementioned divorce and that the beneficiary thereafter resided with his father until at least October 1962. The relationship which came into being between the petitioner and the beneficiary by virtue of the petitioner's marriage to the beneficiary's father in 1952 was discontinued and brought to an end when the aforementioned marriage was legally terminated by divorce in December 1957. Moreover, the beneficiary's father's two remarriages created additional stepmothers of the beneficiary. The statute requires that the petitioner be the "parent" at the time of the filing of the petition. In this case the petitioner cannot meet this statutory requirement and on the basis of all the evidence present in this record together with the authorities cited, it is our considered opinion that the petitioner is not the "parent" of the beneficiary and as a consequence thereof may not petition for issuance of an immigrant visa on his behalf. Clearly, it cannot be held that a family unit is being reunited in this case. Upon full consideration of all the evidence of record, the findings of fact, conclusion of law and the order entered by the District Director of Immigration and Naturalization on June 17, 1963 are hereby approved. Hence, the following order will be entered.

**ORDER:** It is ordered that the order entered by the District Director of Immigration and Naturalization at Los Angeles, California on June 17, 1963, denying the petitioner's petition to accord the beneficiary third preference status as provided in section 203(a)(3) of the Immigration and Nationality Act be and the same is hereby approved.