MATTER OF PAGNERRE

In Visa Petition Proceedings

A-18436068

*Decided by Board March 25, 1971*

Since the stepparent-stepchild relationship created by petitioner's marriage in 1932 to the father of the beneficiary (beneficiary then 8 years of age) did not cease to exist when the marriage creating such relationship was terminated by death of beneficiary's father in 1954 but there was a continuing relationship thereafter between petitioner and beneficiary, petitioner is regarded as the stepmother of beneficiary for immigration purpose and her petition to accord beneficiary preference classification under section 203(a)(1) of the Immigration and Nationality Act, as amended, as a stepdaughter, is approved. [*Matter of Simicevic*, 10 I. & N. Dec. 363, and *Matter of Varela*, Int. Dec. No. 2020, distinguished.]

The visa petition for preference classification under section 203(a)(1) of the Immigration and Nationality Act was approved ʳ the District Director on November 23, 1970. However, he cer-ied the case to this Board because of its possible effect on *Mat-r of Simicevic*, 10 I. & N. Dec. 363 (BIA, 1963).

The petitioner, a native of Yugoslavia, naturalized citizen of ǝ United States, asserts that the 47-year-old female beneficiary, ᴉative of Algeria, is entitled to first preference classification as ᐧ stepdaughter. The record contains the following facts con-ning the claimed relationship: The beneficiary's natural ther died in 1931 and her father married the petitioner in Al-ᴉia in 1932. At that time the beneficiary, then eight years old, ng with the beneficiary's two brothers and one sister, children her father and natural mother, began to live in the home of ᴉr father and newly acquired stepmother, except for time nt away at school some one hundred miles away. This family ᴉtionship continued until the death of the beneficiary's father 954. Following the father's death, only the younger brother of beneficiary continued to reside with petitioner, remaining l 1956, when he married. Petitioner came to the United States 959 and married her present husband the same year. Peti-

tioner visited the beneficiary abroad in 1958, 1963 and 1967, while beneficiary visited the petitioner and her new husband in the United States in 1963 and 1966, having been admitted as a temporary visitor.

Section 101(b)(1)(B) states that the term "child" means an unmarried person under 21 years of age who is a stepchild, whether or not born out of wedlock, provided the child has not reached the age of 18 years at the time the marriage creating the status of stepchild occurred. In *Matter of C—*, 8 I. & N. Dec. 592 (BIA, 1960), this Board found that a married stepdaughter, age 45, was eligible for fourth preference status as a "daughter" within the meaning of section 203(a)(4) of the Immigration and Nationality Act, provided the relationship of stepparent and stepchild had originally been created according to the definition set forth in the Act.

This Board limited the scope of *Matter of C—*, *supra*, in *Matter of Simicevic, supra*, when we affirmed a decision by the District Director, who had found that the stepparent-stepchild relationship, even though originally properly created under the statutory definition, was brought to an end when the childless marriage creating the relationship was judicially terminated, with the natural father obtaining custody of the beneficiary. The natural father had remarried twice, creating two more stepmothers. We concluded, accordingly, that the petitioner was not a "parent" of the beneficiary within the meaning of section 101(b)(2) of the Immigration and Nationality Act, since the marriage creating the stepparent-stepchild affinity had been dissolved by divorce and since there was no continuing relationship existing in fact thereafter between the petitioner and the beneficiary.

In the present case the marriage creating the stepparent-stepchild relationship was terminated by reason of the death of the beneficiary's natural father. Even though the beneficiary did not continue to reside with her stepmother after her father's death, we are not prepared to draw from that the conclusion that the relationship had ended. Even a natural daughter cannot be expected to continue to reside with her parent or parents indefinitely. We find that there is sufficient evidence in the record to show that there was a continuing relationship between the petitioner and the beneficiary long after the death of the beneficiary's father.

In *Matter of Ricci*, A–14753185 (BIA, May 1, 1970, unreported), we held in a similar situation that there still existed a stepmother-stepdaughter relationship even though the benefici-

ary's father had died. We found that the relationship had not been altered by the fact of the petitioner's husband's death, since the family ties had been maintained.

Our holding in *Matter of Simicevic, supra,* was based on the facts in that case. It should not govern in a case such as the present one, where the marriage creating the relationship was terminated by death during the existence of the relationship and the stepparent-stepchild relationship continued in fact thereafter.

Since we have found that there was a continuing relationship between petitioner and beneficiary after the death of beneficiary's father, we now hold that the petitioner in this case may be regarded as the stepmother of the beneficiary under section 101(b)(1)(B) of the Immigration and Nationality Act, and the petition for preference classification under section 203(a)(1) of the Immigration and Nationality Act may be approved.

The conclusion we reach here is not inconsistent with our holding in *Matter of Varela,* Interim Decision No. 2020 (BIA, 1970). We there held that the death of the United States citizen petitioner precluded granting immediate relative status to the alien beneficiary under section 201(b) of the Immigration and Nationality Act. Here, the petitioner lives and the relationship between her and the beneficiary continues in fact notwithstanding the death of the latter's father. Both *Varela* and our present decision accord with the Congressional purpose underlying the provisions of sections 201 and 203 of the Act conferring visa priorities based on family relationships. These priorities were designed for the benefit of the petitioning United States citizen or resident alien, to enable him to be reunited with aliens closely related by blood or marriage. In this case, death did not terminate the relationship. In *Varela,* it did.

**ORDER:** It is ordered that the order entered by the District Director on November 23, 1970 approving the petitioner's petition to accord the beneficiary preference status as provided in section 203(a)(1) of the Immigration and Nationality Act be and the same is hereby approved.