## MATTER OF TENG

### In Deportation Proceedings

### A-34395590-1-2-3-4

*Decided by Board November 26, 1975*

(1) Where there is a sham marriage and no actual familial relationship between the stepchildren and the United States citizen stepparent has ever existed, the stepchildren are not entitled to be considered the children of the United States citizen stepparent within the meaning of section 101(b)(1)(B) of the Immigration and Nationality Act, as amended, notwithstanding the stepchildren may be innocent of any fraudulent intent.

(2) Since, in the instant cases, the marriage between respondents' mother and the U.S. citizen petitioner has been found to be a sham marriage and no actual familial relationship between the respondents (stepchildren) and the petitioner (stepfather) has ever existed, respondents, who were admitted in possession of immigrant visas issued them as the beneficiaries of approved visa petitions filed by the citizen petitioner/stepfather to accord them immediate relative classification as "stepchildren", were not entitled to such status and are deportable under section 241(a)(1) of the Act because excludable at entry for lack of valid immigrant visas. This is true even though respondents may be innocent of any fraudulent intent, the marriage between their mother and the petitioner has not been terminated, and there is still a legal step-relationship in existence.

(3) The fact that the visa petitions on behalf of the respondents were approved at a time, when the Service was investigating the validity of the marriage (apparently in connection with the mother's application for adjustment of status) does not amount to the type of "affirmative misconduct" required to find that the Service is equitably estopped from deporting respondents.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—no valid immigrant visas.

ON BEHALF OF RESPONDENTS: Norman Stiller, Esquire
995 Market Street
San Francisco, California 94103

This case is before us on certification of the immigration judge of his decision dated August 20, 1975 in which he ordered the deportation proceedings against the respondents terminated. The decision of the immigration judge will be reversed.

The respondents, all brothers and sisters, are natives of the Philippines and citizens of China. They range in age from fifteen to twenty years old. The mother of the respondents entered the United States in

1968 as a nonimmigrant visitor. On July 31, 1970 she married a United States citizen in Reno, Nevada. He thereafter submitted a visa petition for the mother as his spouse, and for the respondents as his stepchildren. The latter petitions were approved and the respondents were then issued immigrant visas as immediate relatives of a United States citizen. See section 201(b) of the Immigration and Nationality Act. They were admitted to the United States on August 13, 1973. The petition for the mother was withdrawn.

The Service alleges that the marriage between the respondents' mother and the citizen who petitioned on their behalf was a sham marriage entered into solely for the purpose of obtaining immigration benefits. The order to show cause charges that the respondents were not, and are not, entitled to be considered the children of a United States citizen within the meaning of section 101(b)(1)(B) of the Immigration and Nationality Act and, therefore, they are deportable under section 241(a)(1) of the Act.

The immigration judge found that the marriage in question was in fact a sham marriage in that the partners never resided together and never intended to. He nonetheless concluded that this did not render the respondents deportable. The immigration judge found that the respondents did not participate in any fraudulent scheme and in fact were unaware that the marriage was a sham.

At the hearing, the respondents disputed the allegation that the marriage between their mother and the claimed stepfather was entered into solely for the purpose of obtaining immigration benefits for either the mother or the respondents. It is not disputed that the mother presently lives in San Francisco, California and her husband resides in Seattle, Washington. However, the mother testified that for at least six months after the marriage she resided in San Francisco with her husband and that they intended to live as husband and wife. A witness, who with her husband owns the house in which the mother lived at the time in question, gave similar testimony.

The mother's husband did not appear at the hearing. However, his deposition was taken and made part of the record.[1] In the course of the deposition, the husband repudiated substantial portions of earlier statements he had made. Moreover, statements made by the husband, and which were made part of the record, show that on almost each occasion on which he was questioned, he has given inconsistent statements. Despite this apparent unreliability, he nonetheless has consistently maintained that he never lived with the respondents' mother.

Investigations made by the Service, the reports of which were intro-

---

[1] The deposition was taken before an immigration judge in Seattle, Washington. Counsel for the respondent, as well as a trial attorney, were present and questioned the husband.

duced into evidence, also support a conclusion that the respondents' mother never lived with her husband. The immigration judge found, on the basis of demeanor evidence as well as on the basis of inconsistencies in the statements made by the mother and the other witness, that neither of them were credible witnesses. The finding of an immigration judge with respect to the credibility of a witness will ordinarily be given great weight. *Matter of T—,* 7 I. & N. Dec. 417 (BIA 1957). We are satisfied from a review of all the evidence in the record that the Service has established by clear, convincing and unequivocal evidence that the marriage between the mother of the respondents and her husband was entered into solely for the purpose of conferring immigration benefits, and that they never resided together in a marital relationship.

It is clear that such a relationship would not be sufficient to confer immigration benefits on the mother of the respondents. *Matter of Phillis,* Interim Decision #2407 (BIA July 7, 1975); *Matter of Kitsalis,* 11 I. & N. Dec. 613 (BIA 1966); *Matter of M—,* 8 I. & N. Dec. 217 (BIA 1958). Cf. *Lutwak* v. *United States,* 244 U.S. 604 (1953); *Johl* v. *United States,* 370 F.2d 174 (C.A. 9, 1966).

The record shows that the respondents did not know that their mother and her husband had entered into a sham relationship. The testimony of the oldest child also indicates that until the respondents arrived in the United States, they believed that their mother was in fact living with her husband. It also appears from the record that only one of the respondents has ever met their mother's husband. That meeting was evidently very brief. The other respondents have never met their "stepfather". The marriage still exists in form and apparently no attempts have been made to dissolve it.

The narrow question here is whether the respondents were entitled to be considered the stepchildren of their mother's husband within the meaning of section 101(b)(1)(B) of the Act where the underlying marital relationship was a sham and the respondents have never lived with the stepparent.

One of the primary concerns of the Immigration and Nationality Act is the preservation of the family unit. See H.R. Rep. No. 1365, 82d Cong., 2d Sess., [1954] 2 U.S. Code Cong. & Adm. News 1653, 1680. Where a marriage is terminated by divorce, a step-relationship created by that marriage is also considered terminated. *Matter of Simicevic,* 10 I. & N. Dec. 363 (BIA 1963). Where the marriage is terminated by death of the natural parent but there is an ongoing relationship, the step-relationship is deemed to continue. *Matter of Pagnerre,* 13 I. & N. Dec. 688 (BIA 1971).

In the present case, no family tie has ever existed between the respondents and their mother's husband, nor between the mother and the husband. We do not lightly disregard the fact that the marriage has

not been terminated and that there is still a legal step-relationship in existence. However, we conclude that where there is a sham marriage and no actual familial relationship between the stepchildren and the United States citizen stepparent has ever existed, the stepchildren are not entitled to be considered children of a United States citizen for purposes of the Immigration and Nationality Act. The fact that the respondents may be innocent of any fraudulent intent does not protect them. An alien who has derived an immigration benefit from another may be deportable where the person from whom the status was derived was not in fact eligible to confer any benefits. Cf. *Matter of Ideis*, 14 I. & N. Dec. 701 (BIA 1974). The respondents consequently are deportable under section 241(a)(1) of the Act.

We do not find that the Service is equitably estopped from deporting these aliens. The visa petitions submitted on behalf of the respondents were approved at a time when the Service was investigating the validity of the marriage, apparently in connection with the mother's application for adjustment of status. This, however, does not amount to the type of affirmative misconduct which is required to find equitable estoppel. See *Immigration and Naturalization Service* v. *Hibi*, 414 U.S. 5 (1973); *Matter of Morales*, Interim Decision #2416 (BIA, July 28, 1975).

The respondents applied for voluntary departure. The immigration judge did not consider the request because of the disposition he made of the case. Accordingly, we shall remand the record for the immigration judge to consider the respondents' application.

ORDER: The decision of the immigration judge is reversed.

*Further order:* The record is remanded for further proceedings.

\* \* \* \* \*

(6) Being a person who has no nationality he is, because the circumstances in connexion with which he has been recognized as a refugee have ceased to exist, able to return to the ccuntry of his former habitual residence. . . .

The respondent's refugee certificate is dated January 6, 1969. In January 1970 the Civil War in Nigeria ended and the Federal Military Government declared a general amnesty. In a case decided by the Regional Commissioner in December 1971, only several months after the hearing in this case, a State Department communication was quoted as saying: "In January, 1970, at the conclusion of the war, the Federal Military Government declared a general amnesty, invited Nigerians living abroad to return, and announced a policy of reconciliation and reintegration of Nigerians (mostly Ibos) who had supported the secession." The communication went on to say that there had been no evidence of mass arrests, trials, imprisonments, or executions and that, despite some problems, there was ample evidence that the Federal Military Government was sincerely interested in bringing about the reintegration of the Ibos, including former government officials. *Matter of Iregbulem,* 13 I. & N. Dec. 805, 806–807 (Reg. Com. 1971). Although there has been a change in the government of Nigeria since January 1970, we are unaware of any policy changes affecting the treatment of former supporters of the Biafran secession.

Counsel contends that the United States is compelled to honor the finding of the delegation in Belgium of the United Nations High Commissioner for Refugees, made in 1969, that the respondent is a refugee. We disagree. The United Nations Convention does not provide that a person considered a refugee in one contracting nation must, for that reason, also be considered a refugee in the other contracting nations. We have nevertheless given sympathetic consideration to the determination made in Belgium. However, we have also considered the circumstances under which that determination was made. We find, under Article 1, section C(6) of the United Nations Convention, *supra,* that the circumstances in connection with which the respondent was found by the United Nations authorities in Belgium to be a refugee have ceased to exist.

The respondent has been given the time and the opportunity to pursue his claim that he is a refugee and therefore either is not deportable or is entitled to the temporary withholding of his deportation pursuant to section 243(h) of the Act. He has not come forward with any evidence to support any of these claims except for the 1969 refugee certificate. Whether he relies upon the United Nations Protocol and Convention Relating to the Status of Refugees or upon section 243(h) of the Immigration and Nationality Act, the burden is still his to establish that he has a well-founded fear that his life or freedom will be

threatened in Nigeria on account of his race, religion, nationality, membership in a particular social group, or political opinion. *Matter of Dunar, supra.* He has not sustained his burden.

Upon the record before us, we conclude that the respondent is not a refugee. Moreover, we find, on the basis of the record before us, that the deportation hearing was far, and that deportability has been established by clear, convincing and unequivocal evidence. Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.