MATTER OF MAGANA

In Deportation Proceedings

A-34262770

*Decided by Board September 27, 1979*

(1) With regard to annulments, the relation-back doctrine, which treats marriages as if they had never existed, is a legal fiction designed to insure substantial justice, and it need not be applied in every case where a court has declared a marriage to be void or invalid ab initio.

(2) In immigration cases dealing with the retroactivity of annulments, or of decrees of invalidity, the relation-back doctrine will be applied only where to do so would bring about a more just result.

(3) Where fraud and manipulation of the immigration laws are present in a case, justice is better served by not relating back an annulment or decree of invalidity to cure the illegality of an alien's entry.

(4) Where the respondent entered the United States as the spouse of a citizen, concealing the fact of his prior marriage in Mexico, a decree from a Washington state court declaring the Mexican marriage invalid from its inception will not be given retroactive effect for immigration purposes. *Matter of Astorga,* Interim Decision 2711 (BIA 1979) distinguished.

(5) The Federal Rules of Civil Procedure are not applicable in deportation proceedings, and there is no requirement that interrogatories propounded by an alien be answered by the Immigration and Naturalization Service.

CHARGE:
Order: Act of 1952—Sec. 241(a)(1) [8 U.S.C. 1251(a)(1)]—
Excludable at time of entry under section 212(a)(19) I&N Act (8 U.S.C. 1182(a)(19))—visa procured by fraud or willful misrepresentation of a material fact

ON BEHALF OF RESPONDENT: Charles H. Barr, Esquire
1207 George Washington Way
Richland, Washington 99352

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire and Farb, Board Members

In a decision dated July 8, 1977, an immigration judge found the respondent deportable as charged, denied his application for voluntary departure in the exercise of discretion, and ordered him deported. The respondent appealed. The appeal will be dismissed. We will, however, grant the respondent voluntary departure under section 244(e) of the

Immigration and Nationality Act, 8 U.S.C. 1254(e).

The respondent is a 37-year-old native and citizen of Mexico who entered the United States as an immigrant on October 2, 1972. He obtained his visa based on his marriage to a United States citizen, Renee Bosch. In an Order to Show Cause dated February 11, 1975, it was alleged that at the time of his entry as a permanent resident, the respondent was not lawfully married to Renee Bosch, in that he had previously been married, and that marriage had not been terminated. It was further alleged that because of this prior marriage, the respondent had procured his visa by willfully misrepresenting a material fact. The respondent was therefore charged with deportability under section 241(a)(1) of the Act, 8 U.S.C. 1251(a)(1), as an alien excludable at entry under section 212(a)(19) of the Act, 8 U.S.C. 1182(a)(19).

The facts as set forth at a deportation hearing held on March 18, 1977, indicate that the respondent went through a civil marriage ceremony with Maria Elena Martinez-Valenzuela on June 20, 1971, in Guaymas, Mexico. The respondent alleges that he was intoxicated at the time of this marriage, and that the marriage was never consummated. He states that he left Mexico for the United States immediately after the ceremony. Approximately 1-year later, on May 15, 1972, the respondent married Renee Bosch in the State of Washington.

According to testimony taken at the hearing from the respondent's counsel, the respondent early in 1974 sought a Mexican annulment of his marriage to Maria Elena. Rather than an annulment, a divorce was decreed by a Mexican court on June 15, 1974. The respondent's counsel, "recognizing the possible consequences" of a Mexican divorce (see transcript at 8), began a proceeding in the State of Washington to have the respondent's marriage to Maria Elena declared invalid. A "Declaration of Invalidity" was issued by the Superior Court of the State of Washington, Franklin County, on October 3, 1975. This decree stated that the parties to the marriage had never consummated their union, nor lived together as man and wife, that the marriage was voidable under Mexican law for lack of consummation, that the respondent was inebriated at the time of the marriage, and hence incapable of consent to the marriage, that the parties never intended to marry, unless through a Roman Catholic religious ceremony, and, finally, that the marriage "should be declared invalid for lack of capacity to consent as of the date it was purportedly contracted and for being voidable under the laws of Mexico for lack of consummation." It was argued both at the hearing and on appeal that this Washington decree voided the respondent's marriage to Maria Elena ab initio, and that, due to the Full Faith and Credit clause of the Constitution (U.S. CONST. Art. IV, Section 1), the Washington decree of invalidity overrode the earlier Mexican divorce decree.

It is true that the judgments of a state court are entitled to full faith and credit, while those of a foreign tribunal are only given effect under principles of comity. However, even assuming that the Washington court judgment takes precedence over the prior Mexican judgment, the respondent is still deportable. This is so because we find that, for immigration purposes, the Washington decree does not relate back to cure the illegality of the respondent's entry.

In a recent precedent decision, *Matter of Astorga*, Interim Decision 2711 (BIA 1979), this Board analyzed a declaration of invalidity issued by a Washington state court under the applicable provisions of the Marriage Dissolution Act (Washington Revised Code Section 26.09.040). We held there that the declaration of invalidity related back for immigration purposes, but we emphasized that no fraud, misrepresentation, or manipulation of the immigration laws had been alleged in that case. *Astorga* involved a visa petition filed on behalf of a beneficiary spouse who allegedly had been previously married in Mexico. The Immigration and Naturalization Service argued that the previous marriage had not been terminated, and that the beneficiary's marriage to his citizen wife was therefore invalid. We held the declaration of invalidity to apply retroactively because "there is no purpose of the immigration laws that could be furthered by finding his [the beneficiary's] possible previous marriage still valid and a bar to his present marriage." We distinguished those cases where an alien's entry into the United States was dependent upon his being unmarried, where the alien was in fact married when he entered, but later had the marriage annulled ab initio and then argued that he hadn't been married at the time of his entry (*see, e.g., Hendrix v. INS*, 583 F.2d 1102 (9 Cir. 1978); *Matter of Wong*, 16 I&N Dec. 87 (BIA 1977); *Matter of R—J—*, 7 I&N Dec. 182 (BIA 1956)).

In a converse situation, as noted in *Astorga, supra*, in some cases we refused to relate back annulments where no immigration law fraud was noted, and where injustice would result by applying the relation back concept. *Matter of Castillo-Sedano*, 15 I&N Dec. 445 (BIA 1975); *Matter of B—*, 3 I&N Dec. 102 (BIA 1947). Our analysis of prior cases dealing with annulments that had been declared void ab initio led us to the conclusion that "annulment decrees may have different effects depending on the nature of the case and the purposes to be served by giving an annulment decree retroactive effect." *Astorga, supra*, at 5.

Having carefully studied the record in the present case, as well as the prior precedent decisions, we have concluded that the decree of invalidity in this case should not be given retroactive effect. The respondent testified that he stated on his visa application that he had not been previously married because his attorney and the judge who performed the ceremony for him and Maria Elena had both told him

that that marriage was invalid (transcript at p. 15: "the judge told me I didn't have to do anything [about his marriage to Maria Elena] because the marriage was invalid when the parents wanted the marriage to be celebrated, performed by the church"). The immigration judge found this testimony to be totally unbelievable. An immigration judge's findings with regard to the credibility of witnesses appearing before him are entitled to considerable weight (*Matter of Teng*, 15 I&N Dec. 516 (BIA 1975); *Matter of T—*, 7 I&N Dec. 417 (BIA 1957)), and in this case especially we are inclined to agree with the immigration judge's analysis of the respondent's testimony. In Mexico, civil ceremonies only, not religious ceremonies, result in valid marriages. *See generally Matter of A—E—*, 4 I&N Dec. 405 (BIA 1951). It is incredible that a judge and a lawyer in Mexico would have informed the respondent that a civil ceremony was ineffective if a religious ceremony was desired. We find that the respondent did materially misrepresent his marital history when he applied for an immigrant visa.

As mentioned previously, in those cases dealing with the retroactivity of annulments (and, in *Astorga, supra*, with Washington decrees of invalidity), we have applied the relation back doctrine only where to do so would bring about a more just result.[1] In the present case, given the respondent's misrepresentations, we find that justice would be better served by not relating the Washington decree back for immigration purposes.[2] We thus consider the respondent to have been married to Maria Elena at the time he entered the United States as the husband of Renee Bosch, and we therefore agree with the immigration judge that the respondent is deportable as one who procured his immigrant visa through fraud or misrepresentation.

The respondent, through counsel, makes several procedural arguments on appeal. He contends that a witness should have been called at the hearing to authenticate the Mexican divorce decree. 8 C.F.R. 287.6 governs the admissibility of official records in immigration proceedings, and that regulation does not require that such records be authenticated by witnesses appearing in person. Rather, for foreign records,

---

[1] The respondent argues in his brief that the full faith and credit clause requires us absolutely (regardless of the justness of the result) to apply the Washington decree retroactively, since that decree declared the marriage invalid as of the date it was contracted. However, the cases have recognized that the "relation back" doctrine, which treats marriages as if they had never been, is a legal fiction designed to insure substantial justice, and that it need not be applied in every case where a court has declared a marriage void ab initio. *See Matter of Wong, supra; Matter of Castillo-Sedano, supra; Matter of T—*, 8 I&N Dec. 493 (BIA 1959). *See also Sefton v. Sefton*, 45 Cal. 2d 872 (1955).

[2] Because we find that the declaration of invalidity will not relate back for immigration purposes, we need not decide whether this decree should override the Mexican divorce which, by its very existence, acknowledges the validity of the marriage which the Washington court declared invalid from its inception.

it requires an attestation of genuineness by a person having custody over the records, and a certification by a United States Foreign Service officer as to the genuineness of the signature, and as to the official position of the person having custody over the records. In the present case, the genuineness of the copy was attested to by an officer of the Civil Registry in Guaymas, Sonora, Mexico, and there was a certification by an Immigration officer. While the certification should have been made by a Foreign Service officer, we do not believe that this deviation from the exact procedures set forth in the regulation requires a remand, especially as our decision in this case does not in any way depend on the Mexican divorce.

The respondent further alleges that he was denied procedural due process because the Service did not honor his requests for admissions or answer interrogatories, and that the failure to respond to the interrogatories "constituted admissions of those matters." Brief at 6. Suffice it to say that the Federal Rules of Civil Procedure are not applicable in deportation proceedings, and there is no requirement that requests for discovery be honored. See FED. R. CIV. P. 1, describing the scope of the rules.

The respondent's counsel protested at the hearing that he had had no notice that a deportation hearing would be held that day, and that when he appeared at Service offices on March 18, 1977, he believed it was only for an I-130 interview regarding the respondent's wife. The Acting Trial Attorney stated that counsel had been advised of the deportation hearing by telephone on March 11, 1979. The immigration judge refused to continue the hearing, pointing out that counsel had been representing this respondent for two years, and was therefore familiar with the case, and noting that the hearing had been scheduled in advance, and that there was evidence that counsel had notice of the hearing. We find no error in the immigration judge's denial of the request for a continuance.

Finally, the respondent contends that the immigration judge was strongly biased against him, and that the immigration judge had prejudged the case. He argues that he was thereby denied a fair hearing. We have examined the record carefully, and, while we find that the immigration judge may have made some ill-advised comments at the hearing, he was by no means so biased as to be incapable of rendering a fair decision.

Although we are dismissing this appeal with regard to the findings of deportability, we find that the respondent should have been granted the privilege of voluntary departure. We will therefore sustain the appeal as to the denial of voluntary departure.

ORDER: The appeal is dismissed, except as regards the denial of voluntary departure.

**FURTHER ORDER:** The outstanding order of deportation is withdrawn, and in lieu of an order of deportation the respondent is allowed to depart voluntarily, without expense to the Government, within 30 days from the date of this order or any extension beyond that time as may be granted by the District Director and under such conditions as he may direct. In the event of the respondent's failure so to depart, the order of deportation will be reinstated.