# MATTER OF AWWAL

## In Rescission Proceedings Under Section 246 of the Immigration and Nationality Act

### A-20282043

### *Decided by Board April 4, 1988*

(1) A steprelationship under section 101(b)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(B) (1982), must be based on a marriage that was at some point a valid one.

(2) A sham marriage is invalid from its inception and cannot under any circumstances be the basis of a steprelationship under section 101(b)(1)(B) of the Act.

(3) Even where there is an ongoing actual family relationship between a stepparent and a stepchild, that relationship cannot be recognized under section 101(b)(1)(B) of the Act where the marriage creating the steprelationship was a sham. *Matter of Teng*, 15 I&N Dec. 516 (BIA 1975), clarified.

ON BEHALF OF RESPONDENT:
Michael Maggio, Esquire
Maggio & Kattar
11 Dupont Circle, N.W., 7th Floor
Washington, D.C. 20036

Byron B. Park, Esquire
Park & Associates
703 Market Street, Suite 1900
San Francisco, California 94103

ON BEHALF OF SERVICE:
David M. Dixon
Appellate Counsel

Jane Leroe
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

This is an appeal from a decision of the immigration judge, dated October 4, 1983, rescinding the respondent's prior grant of adjustment of status. Oral argument was heard before the Board on August 21, 1985. The appeal will be dismissed.

The respondent is a 25-year-old native and citizen of Bangladesh. He apparently was paroled into the United States on September 9,

1972.[1] On July 15, 1974, his status was adjusted to that of a lawful permanent resident of the United States. His adjustment was based on his status as the stepchild of his mother's United States citizen husband. *See* section 101(b)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(B) (1982). On August 18, 1975, a notice of intent to rescind was sent to the respondent. The notice alleged that the respondent's mother was separated from her husband at the time his adjustment was granted, and that the respondent therefore did not qualify as the stepchild of a United States citizen at that time. A similar notice was sent to the respondent's mother. Prior counsel of both the respondent and his mother apparently responded to the notices and requested a hearing. A rescission hearing relating only to the respondent's mother was held, and her adjustment was ordered rescinded on the ground that her marriage was a sham entered into in order to procure immigration benefits. This Board ultimately upheld the mother's rescission on August 15, 1979.

On March 5, 1981, the respondent's parole was terminated, and he was placed in exclusion proceedings, charged with excludability under section 212(a)(20) of the Act, 8 U.S.C. § 1182(a)(20) (1982), as an immigrant not in possession of a valid immigrant visa. Counsel for the respondent filed a trial brief in which it was argued, inter alia, that there was no jurisdiction to hold an exclusion hearing because the respondent's lawful permanent resident status had never been rescinded. The respondent noted that in rescission proceedings the Government bears the burden of proving ineligibility for adjustment by clear, unequivocal, and convincing evidence. *See, e.g., Waziri* v. *INS,* 392 F.2d 55 (9th Cir. 1968); *Matter of Suleiman,* 15 I&N Dec. 784 (BIA 1974). At a hearing held on May 18, 1982, counsel reiterated his contention that exclusion proceedings were improper because there had been no rescission proceedings. Because of the complex issues involved, the case was continued by the immigration judge.

A further hearing was held on October 4, 1983. On that date, the immigration judge stated that he was conducting a rescission hearing. Counsel made a motion to terminate the exclusion proceedings because the respondent had not had his lawful permanent resident status rescinded. The immigration judge again noted that he was conducting rescission, not exclusion, proceedings, so the motion was

---

[1] The respondent arrived in this country with a nonimmigrant visitor's visa and there is some evidence that he was admitted as such. However, other evidence reflects that he was not actually admitted, and both parties appear to agree that he was paroled.

found to be premature. Counsel appeared to accede to this. However, counsel then moved for termination of the rescission proceedings because 8 years had passed since the notice of intent to rescind was served. It was argued that it would be "inappropriate and unjust" to proceed with rescission after such a long delay. The immigration judge denied this motion, finding no affirmative misconduct on the part of the Government. *See generally INS v. Hibi*, 414 U.S. 5 (1973). The rescission hearing went forward.

Following the hearing, the immigration judge issued an oral decision rescinding the respondent's adjustment of status. He found the respondent to be a truthful witness and to be innocent of any wrongdoing. He further found that the respondent and his ex-stepfather had a familial relationship during and for some time after the marriage. However, he concluded that because the underlying marriage had been found to be a sham, there had never been a valid marriage under the immigration laws and thus the respondent could not obtain immigration benefits through that marriage. He relied for this holding on our decision in *Matter of Teng*, 15 I&N Dec. 516 (BIA 1975).

On appeal, the respondent first makes two arguments regarding the propriety of the proceedings. He argues that these are exclusion proceedings and the immigration judge was without authority to conduct a rescission hearing in exclusion proceedings. It is alternatively argued that, because the Immigration and Naturalization Service "abandoned" the rescission proceedings for 8 years, it would be fundamentally unfair and excessively harsh to rescind the respondent's adjustment of status now. The primary focus of the respondent's appeal, however, is on the proper interpretation of *Matter of Teng, supra*. He contends that under that decision immigration benefits are available through a stepparent-stepchild relationship even where the underlying marriage was a sham, so long as there has been active parental interest shown by the stepparent in the stepchild.

On appeal, the Service argues first of all that the proceedings are proper. The Service notes that the respondent requested a rescission hearing, and that request was granted. It is further contended on this procedural issue that no prejudice to the respondent has been shown as a result of the delay in holding the hearing. As to the legal issue regarding steprelationships, the Service argues that there can be no steprelationship under section 101(b)(1)(B) of the Act without a valid underlying marriage.

Preliminarily, we find that these rescission proceedings are proper. As pointed out by Appellate Counsel for the Service, the respondent argued that he should be in rescission, not exclusion pro-

ceedings. The immigration judge agreed with the respondent and a rescission hearing was held. The respondent cannot now complain that a rescission hearing should not have been held. We note that counsel pled to the allegations set forth in the notice of intent to rescind and did not protest that he was not prepared for rescission proceedings. Nor has there been a showing that the respondent was prejudiced by the holding of these rescission proceedings, or by the delay in holding them. Moreover, even if we were to hold that, because of the delay, the proceedings were in some way unfair and should be terminated, that would not result in the end of all proceedings against the respondent. Exclusion proceedings could still be brought. *See generally Matter of Belenzo,* 17 I&N Dec. 374 (BIA 1980, 1981; A.G. 1981). While the delay in this case is unfortunate, we conclude that the rescission proceedings were properly held.[2]

We turn next to the issue which both parties have stated is the paramount one in this case. Simply stated, the question is, can there be a stepchild-stepparent relationship within the meaning of section 101(b)(1)(B) of the Act where the marriage creating the steprelationship was a sham from its inception. We agree with the immigration judge and the Service that the answer is no.

In *Matter of Teng, supra,* a stepfather had filed visa petitions on behalf of his wife's children. His marriage to their mother was subsequently determined to be a sham. We held that, "where there is a sham marriage and no actual familial relationship between the stepchildren and the United States citizen stepparent has ever existed, the stepchildren are not entitled to be considered children of a United States citizen for purposes of the Immigration and Nationality Act." *Id.* at 519. The immigration judge relied on this case in finding that, because there was no valid marriage between the

---

[2] The respondent cites *Matter of Quan,* 12 I&N Dec. 487 (D.A.C. 1967), for his contention that the Service should not have instituted rescission proceedings in this case because of the excessively harsh consequences that could result. *Matter of Quan* was a decision made by the Deputy Associate Commissioner for the Immigration and Naturalization Service, who noted in the decision that "the Service may exercise discretion in determining whether rescission proceedings should be instituted in any individual case." *Id.* at 488. In fact, what is complained of here is not the institution of rescission proceedings, but the delay in holding the rescission hearing. In any event, *Matter of Quan* can be of no help to the respondent since neither the immigration judge nor this Board has any authority to terminate proceedings as improvidently begun. The decision whether or not to institute proceedings is a matter of prosecutorial discretion, and once the Service, in the exercise of that discretion, institutes proceedings, we are required to go forward to determine whether the evidence warrants a decision to rescind. *See Matter of Saunders,* 16 I&N Dec. 326 (BIA 1977); *cf. Matter of Ramirez-Sanchez,* 17 I&N Dec. 503 (BIA 1980); *Matter of Lennon,* 15 I&N Dec. 9 (BIA 1974), and cases cited therein.

respondent's mother and stepmother, the respondent was ineligible for immigration benefits through the stepfather. The Service agrees with this interpretation. The respondent, however, finds that *Matter of Teng, supra,* supports his position. He argues that because he did have an actual family relationship with his stepfather, he could obtain immigration benefits through him despite the sham nature of the marriage.

We can understand the respondent's view that *Matter of Teng, supra,* favors his position because it talks of a "sham marriage *and* no actual familial relationship." *Id.* at 519 (emphasis added). We are unwilling, however, to adopt that approach now that we are squarely faced with a situation involving not only a sham marriage but also an actual family relationship between the stepparent and child. A steprelationship under section 101(b)(1)(B) of the Act is, of course, based on a marriage, and it seems clear to us that the marriage forming the basis for the steprelationship must at some point have been a valid one. Where there is not and never has been a valid marriage, there cannot be a steprelationship under the immigration laws. Thus, a marriage which is a sham from the outset cannot form the basis for a steprelationship under section 101(b)(1)(B). We withdraw from the holding in *Matter of Teng, supra,* insofar as it may indicate that a sham marriage may form the basis for a steprelationship if there is an actual family relationship between the stepparent and stepchild.

The respondent cites *Matter of Pagnerre,* 13 I&N Dec. 688 (BIA 1971), as support for his position. *See also Matter of Mowrer,* 17 I&N Dec. 613 (BIA 1981). These cases are clearly distinguishable from the present one, however, since in *Pagnerre* and *Mowrer* there had been valid marriages at some point, whereas here there never was a valid marriage.

Counsel for the respondent recognizes the potential for fraud if steprelationships based on sham marriages are recognized under the immigration laws. However, he urges us to deal with the problem of fraud, not by adopting a "per se" rule that sham marriages can never form the basis for steprelationships, but rather by placing the burden of proof on the party seeking to establish the steprelationship to show that there is no "sham steprelationship." The respondent's approach would not answer the real problem here: the fact that steprelationships, regardless of any family relationship, must be based on a marriage which has at one time been a valid marriage. A sham marriage is invalid from its inception. *See, e.g., Matter of Laureano,* 19 I&N Dec. 1 (BIA 1983); *Matter of Romero,* 15 I&N Dec. 294 (BIA 1975); *Matter of M-,* 8 I&N Dec. 217 (BIA 1958). *See generally Lutwak v. United States,* 344 U.S. 604 (1953). It

cannot under any circumstances be the basis of a steprelationship under section 101(b)(1)(B) of the Act.

The respondent's eligibility for immigration benefits depended entirely on his mother's marriage to a United States citizen. That marriage has been found to have been a sham, and the mother's own adjustment of status was rescinded because of the fraudulent marriage. Based on our discussion above, that marriage cannot form the basis for the respondent's adjustment of status. His adjustment was therefore properly ordered rescinded, and his appeal must be accordingly be dismissed.[3]

**ORDER:** The appeal is dismissed.

---

[3] We note that the respondent may be eligible for legalization under section 201 of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359.