MATTER OF ASTORGA

In Visa Petition Proceedings

A-20952928

*Decided by Board June 19, 1979*

(1) Under the laws of the State of Washington, a marriage in any jurisdiction may be declared invalid as of the date of the marriage and this declaration in essence renders the question of the existence of the marriage totally irrelevant. Wash. Rev. Code § 26.09.040.

(2) Under Wash. Rev. Code § 26.09.040, the question of void and voidable marriages is avoided and a declaration of invalid marriage is obtained in proceedings akin to divorce proceedings.

(3) As a general rule, marriages declared void at inception or annulled will not relate back to cure a ground of exclusion or deportation at the time of entry where the alien entered the United States in an immigrant status dependent on his being unmarried. *Matter of Wong*, 16 I&N Dec. 87 (BIA 1977); *Matter of R—J—*, 7 I&N Dec. 182 (BIA 1956), reaffirmed.

(4) As a general rule, retroactive effect will not be given an annulment in deportation or exclusion proceedings if no immigration law fraud is noted and injustice would result if the relation-back concept were applied. *Matter of Castillo-Sedano*, 15 I&N Dec. 445 (BIA 1975); *Matter of B—*, 3 I&N Dec. 102 (BIA 1947), affirmed.

(5) In a case involving visa petition proceedings, not exclusion or deportation proceedings, where no fraud, misrepresentation, or manipulation of the immigration laws was alleged, and where a declaration of invalid marriage was obtained in the State of Washington, no purpose would be served by finding the possible previous marriage in Mexico an impediment to the present marriage in Washington on which the visa petition is based, and the visa petition will be approved.

ON BEHALF OF PETITIONER: Dan P. Danilov, Esquire
3828 Seattle-First National Bank Bldg.
Seattle, Washington 98154

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

The United States citizen petitioner applied for immediate relative status for the beneficiary as her spouse under section 201(b) of the Immigration and Nationality Act, 8 U.S.C. 1151(b). In a decision dated July 25, 1978, the District Director denied the petition on the ground that the beneficiary had previously entered into a marriage in Mexico,

1

that this prior marriage had not been dissolved, and that the beneficiary was not free to marry the petitioner. The petitioner appealed from this decision. In a decision dated November 24, 1978, this Board remanded the record to the District Director so that he might consider a court order from the Superior Court of Washington for King County declaring the prior marriage invalid from its inception, and a letter from the Municipal President of Cuautla, Jalisco, Mexico, stating that no record of the prior marriage existed in the archives there. The record is now back to us upon certification by the District Director pursuant to our order. In his decision of February 12, 1979, he again found that the petitioner had not provided proof that the declaration of invalidity made the marriage between the petitioner and the beneficiary valid for immigration purposes and reaffirmed his first decision. He did not discuss the letter from the President of the Municipality. However, as we have concluded that the petitioner's marriage is valid for immigration purposes, there is no need to again remand the record.

The petitioner and the beneficiary were married on March 12, 1978, at Seattle, Washington. Previously, in statements made to the Service, the beneficiary and his purported first wife had contended that they were married. Thus, when the present petitioner submitted the visa petition on behalf of the beneficiary, a question arose as to the dissolution of the first marriage. The petitioner submitted an affidavit by the beneficiary that he had not previously been married, and a statement from a City President and Judge of the Civil Register of the State in Santiago Papasquiaro, Durango, Mexico, and letters from five persons attesting to the fact that the beneficiary had not previously been married. Among those submitting the letters was the purported first wife. The District Director found the evidence submitted self-serving, not credible, and not sufficient to overcome the prior information given by the beneficiary and the alleged first wife.

On appeal, the petitioner submitted a copy of an order issued by the Superior Court of Washington for King County on October 6, 1978, and a letter from the Municipal President of Cuautla. The court order was in the form of a "Declaration of Invalid Marriage" and stated that the marriage was invalid from inception. The President's letter stated that no record of marriage existed in that municipality. The record was remanded so that the District Director could consider this evidence. He did, as noted, consider the Declaration of Invalid Marriage and found it unpersuasive.

Since we also find that the letters and the statements of the beneficiary are self-serving and weak evidence, in the fact of the previous information provided, we will focus on the Declaration of Invalid Marriage as the major piece of evidence presented by the petitioner to prove the validity of his present marriage.

2

In 1973, the Washington legislature to a great extent overhauled the laws dealing with domestic relations. As part of this process, it instituted a Marriage Dissolution Act.[1] Included in this Act was a section codified as Washington Revised Code § 26.09.040.[2] This is the section under which the beneficiary here proceeded to have his purported first marriage declared invalid. Since this is the case, it is necessary for us to consider first the legal effect of this action under Washington law, and secondly, its effect for purposes of the immigration law.

As to the first point, the Declaration states that the marriage was "declared invalid for all purposes from its inception and the relationship of the parties hereto does not constitute a marriage under the laws of any jurisdiction where they have resided in the past." It is clear that by the terms of Wash. Rev. Code § 26.09.040 a court can ". . . declare the marriage invalid as of the date it was purportedly contracted;" and that:

(c) If it finds that a marriage contracted in a jurisdiction other than this state, was void or voidable under the law of the place where the marriage was contracted, and in the absence of proof that such marriage was subsequently validated by the laws of the place of contract or of a subsequent domicile of the parties, shall declare the marriage invalid as of the date of the marriage.

These provisions clearly grant the court jurisdiction to do what it did. It would also appear that the question of whether or not the purported marriage was either void or voidable according to Mexican law is irrelevant. The Marriage Dissolution Act in 1973 repealed Wash. Rev. Code § 26.08.050 which provided for the annulment of void marriages.[3] The Act has eliminated distinctions between void and voidable marriages and simply authorizes a declaration of invalidity. The apparent purpose of this action was to avoid argument over the meaning of the words "void" and "voidable" and also to avoid conflict of laws questions.[4] This being the case, it is not necessary to decide whether or not there was a common-law or other type marriage entered into in Mexico, and to identify it as "void" or "voidable."

The fact that the Act repealed the annulment statute, however, and in effect replaced it with a hybrid, is important in the sense that the Washington law consequently stands outside the traditional annulment laws which have previously been considered by this Board. *See generally, Matter of B—,* 3 I&N Dec. 102 (BIA 1947); *Matter of F—,* 9 I&N Dec. 275 (BIA 1961). By its clear terms, this section indicates that

[1] Marriage Dissolution Act (1973) Ch. 157 §§ 1-31, Washington Session Law; 1st Ex. Sess. 1215-29; Codified in Wash. Rev. Code, Title 26 (1975).

[2] Included as an addendum.

[3] 1st Ex. Sess. 1973 Wash. Laws Ch. 157 § 30.

[4] Rieke The Dissolution Act of 1973: From Status to Contract? 49 Wash. L.R. 375, 392-393 (1974).

3

the marriage declared invalid is invalid from inception. The Act consequently provides a means for the parties to have a marriage declared invalid as if it had never existed and in essence renders the question of the existence of the marriage totally irrelevant, but does this in a procedure more analogous to divorce than annulment.[5]

The legal effect under Washington law having been established, the next question that arises is the effect such a declaration has for purposes of the immigration laws. It is apparent from previous cases that the issue of void, voidable, and annulled marriages has been a difficult one. Generally, however, the Board has found that marriages declared void at inception, or annulled, will not relate back to cure a ground of exclusion or deportation at the time of entry where the alien entered the United States in an immigrant status dependent on his being unmarried. *Matter of Wong*, 16 I&N Dec. 87 (BIA 1977); *Matter of R—J—*, 7 I&N Dec. 182 (BIA 1956); *Hendrix v. INS*, 583 F.2d 1102 (9 Cir. 1974). The purpose of such a policy was generally to avoid manipulation of immigration priorities through changes in marital status not undertaken in good faith. *Hendrix, id.*, at 1104.

Conversely, however, other cases recognized that in certain instances, retroactive effect should not be given an annulment, but for an entirely different reason. *Matter of Castillo-Sedano*, 15 I&N Dec. 445 (BIA 1975); *Matter of B—, supra*. The guideline in these latter cases was essentially that despite the fact that annulments generally related back to the time of marriage, this principle would not be applied where no immigration law fraud was noted and where injustice would result if the relation-back concept were applied. In several other cases, the Board found that the annulment decrees were retroactive, to a great extent because the applicable state laws stated so. *Matter of T—*, 3 I&N Dec. 528 (BIA 1949); *Matter of Samedi*, 14 I&N Dec. 625 (BIA 1974).

In the latter case, the result was particularly harsh, and cases that followed tended to distinguish it. *Matter of Wong, Matter of Castillo-Sedano, supra*. The major lesson to be drawn from these cases is that annulment decrees may have different effects depending on the nature of the case and the purposes to be served by giving an annulment decree retroactive effect. Consequently, even if the statute presently under consideration were to be classified as an ordinary annulment law, its effect in regard to the immigration laws would not have to be the same as that cited by the District Director in his decision. In addition, another point of distinction is the fact that in all of the cases cited, with the exception of *Samedi, supra*, either fraud, misrepresentation, or manipulation of the immigration laws was a consideration in the context of deportation or exclusion proceedings. Those cases are consequently also distinguishable from the present on this point. It should also be noted that this result is consistent with the

---

[5] 49 Wash. L.R. 392.

4

general principle that the validity of a marriage for immigration purposes is governed by the law of the place where the marriage is celebrated. *See Matter of Adamo,* 13 I&N Dec. 26 (BIA 1968). It is clear that the State of Washington would recognize the present marriage as valid.

In this instance, the case involves neither exclusion nor deportation, but the approval of a visa petition for a beneficiary who did not receive any immigration benefits through his purported first marriage. In a previous case involving a visa petition, the Board found the fact that the beneficiary's marriage to the petitioner took place prior to the annulment of the first marriage did not render the marriage to the petitioner invalid for immigration purposes. *Matter of F—, supra.* We think that a similar result is warranted here. By his first marriage, the beneficiary did not evade the immigration laws and there is no indication in the record that the present marriage is anything other than bona fide; consequently, a major negative element of the cited deportation and exclusion cases is lacking here. In addition, we can conceive of no purpose that would be served by finding that the present marriage was invalid for immigration purposes.

In short then, the process under which the beneficiary's possible previous marriage was declared invalid under Washington law is distinct from the usual annulment procedures. It makes no distinction between void and voidable marriages and is designed to enable persons to resolve their status for whatever lawful purpose the court will accept. The declaration of invalidity clearly relates back to the date of the marriage and voids it as of the date it was purportedly contracted. The beneficiary's actions have met the criteria of Washington law. His possible prior marriage is thus invalid for all purposes in Washington. Since this is the case, and there is no purpose of the immigration laws that could be furthered by finding his possible previous marriage still valid and a bar to his present marriage, we have concluded that the beneficiary's possible prior marriage does not stand as an obstacle to his present marriage. The appeal will accordingly be sustained.

ORDER: The appeal is sustained and the visa petition is approved.

## ADDENDUM

26.09.040—Petition to have marriage declared invalid or judicial determination of validity—Procedure—Findings—Grounds—Legitimacy of children

(1) While both parties to an alleged marriage are living, and at least one party is resident in this state or a member of the armed service and stationed in the state, a petition to have the marriage declared invalid

5

may be sought by:

(a) Either or both parties, or the guardian of an incompetent spouse, for any cause specified in subsection (4) of this section: or

(b) Either or both parties, the legal spouse, or a child of either party when it is alleged that the marriage is bigamous.

(2) If the validity of a marriage is denied or questioned at any time, either or both parties to the marriage may petition the court for a judicial determination of the validity of such marriage.

(3) In a proceeding to declare the invalidity of a marriage, the court shall proceed in the manner and shall have the jurisdiction, including the authority to provide the maintenance, custody, visitation, support, and division of the property of the parties, provided by this chapter.

(4) After hearing the evidence concerning the validity of a marriage, if both parties to the alleged marriage are still living, the court:

(a) If it finds the marriage to be valid, shall enter a decree of validity:

(b) If it finds that:

(i) The marriage should not have been contracted because of age of one or both of the parties, lack of required parental or court approval, a prior undissolved marriage of one or both of the parties, reasons of consanguinity, or because a party lacked capacity to consent to the marriage, either because of mental incapacity or because of the influence of alcohol or other incapacitating substances, or because a party was induced to enter into the marriage by force or duress, or by fraud involving the essentials of marriage, and that the parties have not ratified their marriage by voluntarily cohabiting after attaining the age of consent, or after attaining capacity to consent, or after cessation of force or duress or discovery of the fraud, shall declare the marriage invalid as of the date it was purportedly contracted;

(ii) The marriage should not have been contracted because of any reason other than those above, shall upon motion of a party, order any action which may be appropriate to complete or to correct the record and enter a decree declaring such marriage to be valid for all purposes from the date upon which it was purportedly contracted:

(c) If it finds that a marriage contracted in a jurisdiction other than this state, was void or voidable under the law of the place where the marriage was contracted, and in the absence of proof that such marriage was subsequently validated by the laws of the place of contract or of a subsequent domicile of the parties, shall declare the marriage invalid as of the date of the marriage.

(5) Any child of the parties born or conceived during the existence of a marriage of record is legitimate and remains legitimate notwithstanding the entry of a declaration of invalidity of the marriage. [Enacted Laws 1st Ex. Sess. 1973 Ch. 157 § 4; Amended by Laws 1975 Ch. 32 § 2.]