Trinidad Z. GARCIA, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 93–2735.

United States Court of Appeals,
Seventh Circuit.

Argued April 6, 1994.

Decided July 27, 1994.

Mary L. Sfasciotti (argued), Chicago, IL, for petitioner.

Michael J. Shepard, Asst. U.S. Atty., Crim. Div., Chicago, IL, Janet Reno, U.S. Atty. Gen., Washington, DC, A.D. Moyer, Samuel Der–Yeghiayan, I.N.S., Chicago, IL, Ellen Shapiro, Office of Immigration Litigation, Civ. Div., William J. Howard, David J. Kline, Kristin A. Cabral (argued), Dept. of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before CUMMINGS and RIPPLE, Circuit Judges, and CRABB, Chief District Judge.*

RIPPLE, Circuit Judge.

Trinidad Zaide Garcia, a citizen of the Philippines, petitions for review of a final order of deportation. *See* 8 U.S.C. § 1105a(a) (establishing judicial review of all final deportation orders). For the reasons that follow, we affirm.

I

BACKGROUND

In October 1978, the petitioner's father was admitted from the Philippines to the United States as a permanent resident alien. Shortly after admittance, he filed a visa petition for his daughter's admission to the United States as an unmarried daughter of an alien lawfully admitted for permanent residence pursuant to section 203(a)(1) of the Immigration and Nationality Act (INA), 8

---

* The Honorable Barbara B. Crabb, Chief Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation.

U.S.C. § 1153(a)(1). Although the petitioner had married Oscar Garcia in a Philippine civil ceremony in January 1978, she attested to being unmarried in various immigration documents as well as in an interview with a consular official. She eventually was admitted to the United States on March 7, 1981. In May 1982, she returned to the Philippines to remarry Oscar Garcia in a Catholic ceremony.

After returning to the United States in June 1982, the petitioner filed a visa petition for her husband's admission to the United States as the spouse of a permanent resident alien. In support of Oscar's visa petition, the petitioner submitted a sworn statement that she had married Oscar in a civil ceremony in January 1978 and in a religious ceremony in May 1982. A.R. 280. She also submitted their Catholic marriage certificate, which notes at the bottom the existence of the 1978 civil marriage. A.R. 282. Oscar's visa petition was approved in September 1983, although for reasons unknown he neither obtained an immigrant visa nor immigrated to the United States.

In early 1986, the petitioner applied for United States citizenship. The Immigration and Naturalization Service (INS) denied her citizenship application on the basis of her 1978 civil marriage. On March 24, 1986, the INS charged the petitioner with deportability under, among other provisions, section 212(a)(19) of the INA, 8 U.S.C. § 1182(a)(19), for willfully misrepresenting a material fact (her marital status) in procuring a visa. While the petitioner's deportation proceedings were pending, she obtained an annulment decree in April 1987 from a Philippine court for her 1978 civil marriage.

At her hearing before the Immigration Judge (IJ), the petitioner admitted that she and Oscar Garcia did participate in a January 1978 civil marriage. But she stated that she went through with the civil ceremony only out of guilt from having engaged in sexual relations with Oscar a few days beforehand. After the civil ceremony, she neither lived with Oscar as his wife nor told anyone that she had married him. The petitioner acknowledged that, when she sought entry to the United States, she was aware that her application was contingent upon her unmarried status because she was seeking to enter as the unmarried daughter of a permanent resident alien. She testified that she did not disclose her marriage to immigration authorities, however, because she did not consider a civil marriage to have effectuated a change in her marital status. Rather, she believed that only if she had been married in the Catholic Church would she in fact have been married at the time she informed immigration authorities that she was not married.

In a May 25, 1988 decision, the IJ found the petitioner deportable. The IJ first found that the petitioner was legally married as of January 5, 1978 for immigration purposes. He based this determination on the fact that the petitioner testified that she had intended to become Oscar Garcia's wife by means of the civil ceremony. The IJ then turned to the issue of the Philippine annulment of the civil marriage in April 1987. He noted that the Philippine court's annulment decree declared the civil marriage to be void ab initio. He also stated that the Law Librarian at the Library of Congress concluded that the Philippine annulment meant that under Philippine law the civil marriage is deemed never to have occurred at all. Nonetheless, the IJ held that the circumstances of this case dictated that the annulment not be given retroactive effect. *See Matter of Magana,* 17 I & N Dec. 111 (BIA 1979) (applying "the relation back doctrine only where to do so would bring about a more just result"). He found the petitioner's testimony concerning her failure to inform immigration authorities about her 1978 civil marriage to be "neither plausible or credible." A.R. 56. The IJ therefore concluded that there was clear, unequivocal, and convincing evidence [1] that the petitioner willfully misrepresented her marital status in procuring her visa and thereby violated section 212(a)(19) of the INA.[2] The

---

1. *See Woodby v. INS,* 385 U.S. 276, 286, 87 S.Ct. 483, 488, 17 L.Ed.2d 362 (1966) ("We hold that no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true.").

2. The IJ also denied the petitioner's requests for discretionary relief under section 212(c), 8

IJ entered an order of deportation pursuant to INA section 241(a)(1), 8 U.S.C. § 1251(a)(1). The petitioner was, however, granted voluntary departure. The Board of Immigration Appeals summarily dismissed the petitioner's appeal.

## II

### DISCUSSION

■ On appeal, the petitioner submits that the IJ erred in not looking to Philippine law in determining whether her 1978 civil marriage was valid at its inception. According to the petitioner, if the IJ had examined Philippine law, he would have found that the civil marriage was void ab initio. First, because the petitioner was under 23 years of age at the time of the marriage and did not have her parents' consent to marry, she and Oscar were required to wait three months after the issuance of a marriage license before marrying pursuant to Philippine law. As the Philippine court which granted the annulment for the 1978 civil marriage found, the couple failed to fulfill this requirement. Second, neither party to the marriage resided in the municipality in which the marriage was solemnized. The couple obtained the civil marriage license in an improper municipality by fraudulent means. The petitioner therefore asserts that the IJ should never have considered the 1978 civil marriage to have taken place. The petitioner points out that the IJ did not have to take the petitioner's word on the status of her 1978 civil marriage nor make any determination or application of Philippine domestic relations law. Rather, according to the petitioner, the IJ simply should have found, as the results of the IJ's research request at the Library of Congress concluded, that the April 1987 Philippine annulment of the 1978 civil marriage related back to that marriage, thereby negating the marriage's very existence.

■ In focusing on Philippine law and not on the issue of her state of mind in representing her marital status in procuring a visa, we believe that the petitioner has misapprehended the immigration statute at issue. Section 212(a) of the INA lists classes of aliens who are ineligible to receive visas and who are to be excluded from admission into the United States. The petitioner has been charged as deportable under one of those classes:

> Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact[.]

8 U.S.C. § 1182(a)(19). The language of the statute is phrased in terms of subjective intent and, indeed, the INS's longstanding interpretation of the statute supports such a reading. *See Suite v. INS*, 594 F.2d 972, 973 (3d Cir.1979) (stating that "recent judicial and administrative decisions have interpreted 'willful' for purposes of section 212(a)(19) as entailing voluntary and deliberate activity and have held that knowledge of the falsity of a representation is sufficient to satisfy the scienter element of that section").

In *Matter of Magana*, 17 I & N Dec. 111 (BIA 1979), the INS sought to deport under section 212(a)(19) an immigrant who had obtained his visa based on his alleged marriage to a United States citizen. The Service maintained that his previous marriage had never been terminated. The existing previous marriage, of course, precluded a lawful marriage between himself and the United States citizen to whom he claimed he was married. The immigrant argued that a subsequently obtained annulment decree for his first marriage should have related back to cure the illegality of his entry. The Board of Immigration Appeals did not agree. The Board stated that, although *Matter of Astorga*, 17 I & N Dec. 1, 4 (BIA 1979), held that a declaration of an invalid marriage *could* relate back to the date of the marriage for immigration purposes, *Astorga* "emphasized that no fraud, misrepresentation, or manipulation of the immigration laws had been alleged in that case." *Magana*, 17 I & N Dec. at 113. The *Magana* Board stated:

> We distinguished those cases where an alien's entry into the United States was

U.S.C. § 1182(c) (waiver of deportation grounds), and under section 244(a)(1), 8 U.S.C.

§ 1254(a) (suspension of deportation). The petitioner does not raise either issue in this review.

dependent upon his being unmarried, where the alien was in fact married when he entered, but later had the marriage annulled ab initio and then argued that he hadn't been married at the time of his entry.

*Id.* (citations omitted). Because the IJ in *Magana* found the immigrant's testimony concerning the reasons he failed to disclose the existence of his previous marriage to immigration authorities not to be credible, the *Magana* Board held that a finding of material misrepresentation under section 212(a)(19) was warranted. The fact that the law of the jurisdiction in which the annulment was granted deemed annulled marriages void ab initio was not controlling. *See also Hendrix v. INS*, 583 F.2d 1102, 1103 (9th Cir.1978) (refusing to give retroactive effect to an annulment in order to cure an immigrant's illegal entry).

The petitioner argues that *Magana* is distinguishable in that the annulment decree in that case was not granted by the jurisdiction in which the first marriage took place, namely Mexico, but rather was granted by the state of Washington. In her case, by contrast, the petitioner's 1978 civil marriage took place in the Philippines, and the decree annulling the marriage was issued by a Philippine court. We find no import in this distinction. There is no indication that *Magana* turned on which jurisdiction issued the annulment. Neither *Magana* nor *Astorga* set forth any technical analysis that an IJ or a reviewing court should undertake in applying the relation back doctrine; rather, those cases stated that the relation back doctrine should be applied "only where to do so would bring about a more just result." *Magana,* 17 I & N Dec. at 114; *see also Astorga,* 17 I & N Dec. at 4. Both cases make clear that retroactive effect ought to be given to an annulment only when to do so would be compatible with the purpose and intent of the immigration law. In the context of section 212(a)(19), therefore, this principle generally prevents retroactive effect when it would sanction a willful misrepresentation made at the time of application for the visa. *See Hendrix,* 583 F.2d at 1104 (stressing the need "to avoid manipulation of the immigration priorities through changes in marital status not undertaken in good faith"); *Astorga,* 17 I & N Dec. at 4 (same); *Magana,* 17 I & N Dec. at 114 ("In the present case, given the respondent's misrepresentations, we find that justice would be better served by not relating the [annulment] decree back for immigration purposes.").

It is against this backdrop that we now determine whether there existed substantial evidence to support the finding that the petitioner was deportable as charged pursuant to section 212(a)(19). *See Sivaainkaran v. INS,* 972 F.2d 161, 163 (7th Cir.1992) (stating that pursuant to 8 U.S.C. § 1105a(a)(4) we review findings of fact supporting a deportation order under the substantial evidence test). The IJ based his determination that the petitioner was deportable upon her testimony and the circumstances of the case:

> After reviewing the evidence, I find that the respondent did willfully misrepresent her marital status when she entered the United States. The respondent's intentions were manifested in her actions. She deliberately and voluntarily participated in a civil ceremony in 1978. The respondent's claim that, since she was not validly married in a religious ceremony, she thought that she was not validly married, is neither plausible or credible in view of her testimony.
>
> Having concluded the respondent procured her visa by fraud, I find that justice would not be served by giving relation back effect to the annulment decree.

A.R. 56. Although, at least on the cold record before us, the review of petitioner's intent appears to be a close one, we believe that the IJ's finding of deportability is supported by substantial evidence. An IJ's credibility determinations are to be accorded significant deference. *Palacios–Torres v. INS*, 995 F.2d 96, 100 (7th Cir.1993); *see also Estrada v. INS,* 775 F.2d 1018, 1021 (9th Cir.1985) ("Because the immigration judge is in the best position to evaluate the alien's testimony, his or her credibility determinations are to be given much weight."). This deferential standard does not render our review a rubber stamp. In this case, however, the petitioner's eligibility for an admission

preference depended on her being unmarried, and the petitioner admitted in her testimony that she was well aware of this fact. She thus had a strong motive not to disclose her 1978 civil marriage. These factors, when evaluated in light of the opportunity of the IJ to observe the petitioner's live testimony, make the conclusion that the petitioner intentionally misrepresented her marital status to immigration authorities a permissible one. We cannot say that, based on the record as a whole, the IJ lacked substantial evidence on which to find that the petitioner willfully misrepresented a material fact and, as a result, that the petitioner was deportable as charged.

### Conclusion

For the foregoing reasons, we affirm the decision of deportation.

AFFIRMED.