United States Court of Appeals,

Fifth Circuit.

No. 96-60335

Summary Calendar.

Marcia M WITTER;  Abraham Nee Ntreh, Petitioners,

v.

IMMIGRATION and NATURALIZATION SERVICE, Respondent.

May 30, 1997.

Petition for Review of an Order of the Board of Immigration Appeals.

Before DAVIS, EMILIO M. GARZA and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Marcia M. Witter and Abraham Nee Ntreh seek review of a final order of the Board of Immigration Appeals ("BIA" or "Board") finding them deportable under § 241(a)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(1)(A).  We affirm.

I

Witter is a native of Jamaica and citizen of the United Kingdom.  Abraham Nee Ntreh is a native and citizen of Ghana.  Both entered the United States legally and were married in Dallas, Texas in August 1988.  In May 1989, Nee Ntreh filed a petition for annulment alleging that Witter had fraudulently induced him to marry her, that the couple had never lived together, and that they had never consummated the marriage.  Witter signed a waiver of notice in which she swore that she read and understood the annulment petition and agreed that the petition could be considered by the court without further notice to her.  A transcript of the hearing indicates that Nee Ntreh appeared and testified at the proceeding.  The court granted the annulment and sent a copy of the order to Witter at the address provided in the waiver.  Witter's apartment number was omitted from the address to which the order was sent.

While in London five months later, Petitioners applied for new immigrant visas with the American embassy, representing that they were married and presenting their 1988 marriage certificate

as evidence. Witter received a preference for entry based on her employment as a nurse at Parkland Hospital in Dallas. Nee Ntreh's application was granted because he was Witter's spouse. Petitioners made no mention of the annulment in their visa applications.

In June 1993, the Immigration and Naturalization Service ("INS") issued show cause orders against Witter and Nee Ntreh alleging that they were deportable under INA § 241(a)(1)(a) for having willfully misrepresented a material fact in order to obtain Nee Ntreh's visa under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i).[1] The INS later filed additional charges against Witter, alleging that she was excludable under INA § 212(a)(6)(E)(i), 8 U.S.C. § 1182(a)(6)(E)(i), for alien smuggling.[2] In addition, the INS charged Nee Ntreh with marriage fraud under INA § 241(a)(1)(G)(ii), 8 U.S.C. § 1251(a)(1)(G)(ii).[3]

At that time, Petitioners filed a petition in Texas state court seeking to set aside the 1989 annulment order. Petitioners alleged that they never intended to complete the annulment and only recently discovered that an order annulling their marriage had been issued. Nee Ntreh testified that he did not attend the original annulment hearing and that he and Witter had never lived apart. The state court set aside the annulment based on Petitioners' representations. However, the State subsequently charged Nee Ntreh with perjury based on his representations regarding the annulment.

---

[1] INA § 212(a)(6)(C)(i) states: "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or entry into the United States or other benefit provided under this chapter is excludable." In 1990, Congress amended the INA, redesignating INA § 212(a)(19) as § 212(a)(6)(C)(i), codified at 8 U.S.C. § 1182(a)(6)(C)(i). The amendment, however, applies only to individuals entering the United States on or after June 1, 1991. Because Petitioners entered the United States in 1989, the show cause orders should have charged excludability under § 212(a)(19). However, the Board found that Petitioners never objected to the designation and that they suffered no prejudice from the error, since the language of INA § 212(a)(19) and amended § 212(a)(6)(C)(i) are identical in all relevant respects. All subsequent references in this opinion will be to INA § 212(a)(19).

[2] INA § 212(a)(6)(E)(i) states: "Any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is excludable."

[3] INA § 241(a)(1)(G)(ii) states: "An alien shall be considered to be deportable as having procured a visa or other documentation by fraud ... if ... it appears to the satisfaction of the Attorney General that the alien has failed or refused to fulfill the alien's marital agreement which in the opinion of the Attorney General was made for the purpose of procuring the alien's entry as an immigrant."

After the deportation proceedings were set for hearing, Nee Ntreh requested a continuance until the state criminal perjury charges against him were resolved. Nee Ntreh explained that he wished to testify in his own defense but did not wish to sacrifice his Fifth Amendment privilege against self-incrimination. The Immigration Judge ("IJ") denied the continuance. However, the IJ did not compel Nee Ntreh to take the stand when the INS called him as a hostile witness.

The IJ found Witter and Nee Ntreh deportable as charged. On appeal, the BIA affirmed the IJ's denial of a continuance and its determination that both Witter and Nee Ntreh were deportable for willful misrepresentation under INA § 212(a)(19). However, the Board dismissed the alien smuggling charge against Witter, finding no evidence that Witter had engaged in smuggling "for gain," an essential element of the offense. The Board also dismissed the marriage fraud charge against Nee Ntreh.

Petitioners timely petitioned for review, arguing that (1) the BIA erred in refusing to relate back the order vacating the annulment to validate their marriage *ab initio,* thus curing any alleged misrepresentation on their visa petition; (2) the Board erred in finding that there was no common law marriage; (3) the Board erred in finding Petitioners' misrepresentations to be "willful"; (4) Witter's representations of marital status were immaterial to her visa application, thus INA § 212(a)(19) does not apply to her; and (5) the Board abused its discretion in affirming the IJ's denial of Nee Ntreh's motion for continuance.

II

We have jurisdiction to review the Board's decision under INA § 106, 8 U.S.C. § 1105a(a).[4] We will affirm an order of deportation issued by the BIA if supported by "reasonable, substantial, and

---

[4]Congress recently passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009, which amended 8 U.S.C. § 1105a(a)(10) in part to significantly curtail our jurisdiction to review certain orders of the Board. *See Mendez-Rosas v. INS,* 87 F.3d 672 (5th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997); *Pichardo v. INS,* 104 F.3d 756 (5th Cir.1997); 8 U.S.C. § 1105a(a)(10) (removing federal court jurisdiction to review deportation orders based on certain criminal convictions). However, the AEDPA and IIRIRA do not affect our jurisdiction to consider orders involving application of INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), or its predecessor provision, INA § 212(a)(19).

probative evidence on the record considered as a whole." *Carbajal-Gonzalez v. INS,* 78 F.3d 194, 197 (5th Cir.1996) (internal citations omitted). We review findings of fact for substantial evidence. *Id.* We will affirm the Board's findings of fact unless the alien can show that the evidence in his favor "was so compelling that no reasonable factfinder could conclude against it." *Id.* We review conclusions of law *de novo,* but with deference to the BIA's interpretation of ambiguous statutory provisions. *Id.*

A

The state court order vacating the annulment retroactively validated Petitioners' marriage from its inception under Texas law; thus, Witter and Nee Ntreh are now formally married. Petitioners assert that the order vacating the annulment proves that they were married at the time of entry, and thus their statements concerning marital status on their visa applications were not misrepresentations. The BIA affirmed the IJ's finding that although the order vacating the annulment "may be valid for all concerns of the state, ... it cannot and does not make a lie uttered to a visa officer in 1989 a truthful statement when it was made." Petitioners assert that the BIA erred in refusing to give retroactive effect to the order to cure the misrepresentation.

We have never specifically addressed this issue; however, Petitioners' assertion is contrary to decisions of the Seventh and Ninth Circuits and the BIA. In *Hendrix v. INS,* 583 F.2d 1102, 1103 (9th Cir.1978), the Ninth Circuit held that a woman admitted to the United States based on her representation that she was unmarried could not retroactively cure the fact that she was married at the time of entry by obtaining a subsequent annulment. The court held that "[u]nless unusual circumstances dictate that in the interest of justice retroactive effect should be given ... it is the marital status at the time of entry that should serve as the basis for one alien's preferment over others." *Id.* (internal citation omitted).

The Seventh Circuit, in a case factually similar to *Hendrix,* held that willful misrepresentation under INA § 212(a)(19) focused on the alien's subjective state of mind at the time of the representation, not on technical legal issues involving the validity of the marriage or retroactivity of the annulment under the law of the jurisdiction in which it was granted. *Garcia v. INS,* 31 F.3d 441,

443 (7th Cir.1994). The court accordingly refused to give retroactive effect to an annulment procured after entry to the United States to sanction a willful misrepresentation made at the time of application for the visa. *Id.*; *see also Matter of Magana,* 17 I & N Dec. 111 (BIA 1979) (alien who entered United States based on marriage to American citizen although already married to noncitizen could not overcome charges of fraud by subsequently having first marriage annulled); *cf. Matter of Astorga,* 17 I & N Dec. 1 (BIA 1979) (holding that annulment related back to original date of marriage where there was no fraud, misrepresentation, or manipulation of immigration law).[5]

The BIA found that Witter and Nee Ntreh were not legally married under Texas law at the time of their visa applications, regardless of the legal fiction created by the subsequent order vacating the annulment. The record shows that Petitioners sought to vacate their annulment only after they learned that the INS contemplated deportation proceedings against them. The fact that this case involves an order vacating an annulment, rather than an annulment as in the precedents cited, does not alter the application of the basic principle that changes in marital status undertaken after entry into the United States should not be used to manipulate immigration law. *See Garcia,* 31 F.3d at 444; *Hendrix,* 583 F.2d at 1104. The BIA properly refused to relate back the order vacating the annulment to cure Petitioners' misrepresentations.

B

Witter and Nee Ntreh next claim that even though their 1988 ceremonial marriage had been annulled, they subsequently entered into a common-law marriage prior to their visa applications. Therefore, they argue, they did not misrepresent their marital status. This argument lacks merit. First, the BIA found that Petitioners relied upon their annulled 1988 ceremonial marriage, not upon

---

[5]Petitioners' reliance on *Mayo v. Schiltgen,* 921 F.2d 177 (8th Cir.1990), is misplaced. In that case, the Eighth Circuit stated that an alien who represented that she was unmarried on her visa application despite the fact that she believed she was married might not be guilty of misrepresentation if her marriage was void under the law of her home country at the time of entry. *Id.* at 180. *Mayo* apparently conflicts with the Seventh Circuit's holding in *Garcia* that § 212(a)(19) focuses on the alien's state of mind, not legal technicalities. We need not decide which is the proper interpretation of the statute. As an initial matter, the Eighth Circuit's pronouncement was dictum; the court reversed and remanded because the district court affirmed the BIA on grounds that the agency had not considered. Furthermore, in the instant case, the BIA found that Witter and Nee Ntreh, unlike *Mayo,* both believed that they were unmarried at the time of entry to the United States and were, in fact, unmarried at that time under Texas law.

a subsequently arising common law marriage, when representing that they were married on their visa applications. The record shows that Petitioners listed 1988 as their marriage date and presented their 1988 marriage certificate to the embassy as proof of their marital status. There is no evidence that Petitioners informed the visa officer that the ceremo nial marriage evidenced by the certificate had been annulled and that they were instead relying on a common law marriage arising after the annulment.

Furthermore, the Board found that the evidence did not support the existence of a common law marriage. Under Texas law, three elements are necessary to establish a common law marriage. The parties must (1) agree to be married, (2) live together after the agreement as husband and wife, and (3) represent to others that they are married. Tex. Fam.Code Ann. § 1.91(a)(2) (Vernon 1993); *see Estate of Giessel,* 734 S.W.2d 27, 30 (Tex.App.1987, writ ref'd n.r.e.). Substantial testimonial and documentary evidence supports the BIA's findings that after the annulment, Petitioners resided at separate addresses, listed themselves as single on various documents, referred to each other as "friends," "cousins," "relatives," or siblings, and, in light of the circumstances surrounding the annulment, never formed the requisite intent to be married. Therefore, the Board properly found that Petitioners were not married under the common law at the time of their visa applications, and their averments to the contrary constituted misrepresentations.[6]

C

Petitioners argue in the alternative that any misrepresentations concerning their marital status were not made "willfully" as required under § 212(a)(19). The element of willfulness is satisfied by a finding that the misrepresentation was deliberate and voluntary. *Espinoza-Espinoza v. INS,* 554 F.2d 921, 925 (9th Cir.1977). Proof of an intent to deceive is not required; rather, knowledge of the falsity of the representation is sufficient. *Id.; Forbes v. INS,* 48 F.3d 439, 442 (9th Cir.1995).

---

[6]Moreover, the BIA did not abuse its discretion by refusing to consider new evidence proffered by Petitioners on appeal on the grounds that the evidence was either available prior to the IJ's decision or was immaterial to deportation. *See Reyes-Hernandez v. INS,* 89 F.3d 490, 494 (7th Cir.1996) (noting that although Board may receive evidence not submitted to IJ, its practice is not to do so, but rather to remand to IJ only if it believes evidence might change outcome).

Petitioners argue that they held a good faith belief that they were married because they had no knowledge of the annulment decree. Substantial evidence, however, supports the BIA's conclusion that both Petitioners were aware that their marriage had been annulled. Nee Ntreh initiated the annulment proceeding and was personally present at the hearing. Although Witter did not attend the hearing, she signed a waiver of citation and notice in the cause, effectively conceding the allegations made in the annulment petition and explicitly allowing the court to consider the petition without further notice to her. Court records show that a copy of the annulment decree was mailed to her address.[7] Therefore, the BIA properly determined that both Witter and Nee Ntreh knew at the time that they applied for their visas that their marriage had been annulled.

D

Witter argues that even if she willfully misrepresented that she and Nee Ntreh were married, INA § 212(a)(19) does not apply to her actions. The statute requires that the willful misrepresentation be material to the procurement of a visa. Although Nee Ntreh's visa was contingent upon his purported marriage to Witter, Witter sought entry to the United States based on her employment as a nurse. Witter's marital status, while relevant to Nee Ntreh's entry, was irrelevant to the procurement of her own visa petition. *See Kungys v. United States,* 485 U.S. 759, 772, 108 S.Ct. 1537, 1547, 99 L.Ed.2d 839 (1988) (holding that test of whether misrepresentations are material is whether they had natural tendency to influence decision of INS); *Forbes,* 48 F.3d at 442-43 (applying *Kungys* definition of "materiality" to INA § 212(a)(19)). Witter argues that § 212(a)(19) does not apply to aliens who make misrepresentations material only to the procurement of visas for others.

Witter did not raise this issue before the IJ or on appeal to the Board, and neither the IJ's nor the BIA's decision addresses the question. We have no jurisdiction to consider issues that were not

---

[7]The court records indicating the address to which notice of the annulment was sent did not specify Witter's apartment number. Witter argues that this omission proves that she did not receive actual notice of the final decree. We disagree. The omission of the apartment number is not conclusive proof that the annulment decree was never properly delivered. Moreover, the IJ found Witter's testimony that she "couldn't remember" receiving notice of the annulment decree not credible.

presented to or considered at the administrative level on appeal. *Yahkpua v. INS,* 770 F.2d 1317, 1320 (5th Cir.1985); *Ka Fung Chan v. INS,* 634 F.2d 248, 258 (5th Cir.1981); INS § 106(c), 8 U.S.C. § 1105a(c) ("An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations....").

Witter, however, asserts that she was unaware that INA § 212(a)(19) constituted the basis of her deportability until the Board issued its final decision. Witter argues that the IJ's decision after remand strongly suggested that her deportability rested on the alien smuggling charge, not § 212(a)(19). Only after the BIA dismissed the smuggling charge and affirmed her deportation was it clear that § 212(a)(19) constituted the basis of her deportation. Therefore, Witter asserts, she had no opportunity to raise the issue of materiality before the Board.

We disagree. The show cause orders issued to Witter clearly charged her with both misrepresentation of a material fact for the purpose of procuring a visa for Nee Ntreh and with alien smuggling. Although the IJ's decision does not specifically discuss the individual charges or their elements and couched its discussion of Witter's deportability in terms of "aiding and abetting," the IJ specifically found Witter "deportable as charged." At no time did the IJ dismiss the § 212(a)(19) charge against her, and either charge alone was sufficient to support her deportation. Witter's neglect in failing to raise the issue of materiality before the Board does not excuse her failure to exhaust her administrative remedies. Consequently, we lack jurisdiction to consider the materiality of Witter's misrepresentations.

E

Nee Ntreh argues that the BIA abused its discretion by affirming the IJ's denial of his request for a continuance of the deportation proceeding until the completion of the pending state criminal proceeding against him. The grant of a continuance of a deportation hearing lies within the sound discretion of the immigration judge, who may grant a continuance upon a showing of good cause. *Patel v. INS,* 803 F.2d 804, 806 (5th Cir.1986); 8 C.F.R. § 3.29 ("The Immigration Judge may grant a motion for continuance for good cause shown."); 8 C.F.R. § 242.13 ("After the commencement

of the hearing, the Immigration Judge may grant a reasonable adjournment either at his or her own instance or, for good cause shown, upon application by the respondent or the Service.").

Nee Ntreh asserts that he was unable to testify in his defense at the deportation hearing because to do so would have jeopardized his Fifth Amendment right against self-incrimination in the criminal proceeding. The BIA found that Nee Ntreh failed to show good cause for a continuance, citing the Third Circuit's decision in *Musso v. INS,* 574 F.2d 794, 795 (3rd Cir.1978) (rejecting argument that choice between asserting privilege against self-incrimination and entry of defense in deportation proceeding unlawfully burdened exercise of Fifth Amendment rights).

We find no abuse of discretion in the Board's determination. The mere fact that a parallel criminal proceeding exists does not undercut Nee Ntreh's constitutional privilege. *Hoover v. Knight,* 678 F.2d 578, 581 (5th Cir.1982) (holding that parallel criminal and civil proceedings alone do not raise questions of constitutional magnitude with respect to privilege against self-incrimination). Nee Ntreh was under no obligation to testify at the deportation hearing; his Fifth Amendment right against self-incrimination was thus unimpaired. Neither Nee Ntreh's testimony, nor a negative inference drawn from his failure to testify, was necessary for a finding of deportability. Indeed, the record does not indicate that the Board drew any negative inference from Nee Ntreh's silence, even though it would have been constitutionally permitted to do so. *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) (holding that Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"); *Hoover,* 678 F.2d at 582 n. 1 (applying *Baxter* in deportation context). The decision whether or not to testify necessarily implies some collateral limitations on one's ability to assert a claim or a defense. Such difficult litigation choices, however, do not substantially infringe Fifth Amendment rights. *Hoover,* 678 F.2d at 582; *Musso,* 574 F.2d at 795.

Moreover, although Nee Ntreh argues that the IJ merely had to postpone the proceedings for "a matter of weeks," Nee Ntreh was unable to inform the IJ, when requesting the continuance, when he expected the criminal proceedings to be completed. In fact, Nee Ntreh's counsel informed the IJ that the criminal proceedings were not a priority because Nee Ntreh was out on bond, thus

implying that the continuance might be lengthy. The BIA did not abuse its discretion in affirming the IJ's refusal to grant a continuance of indefinite duration.

## III

Finally, Petitioners request that we remand the case for consideration of their eligibility for voluntary departure under INA § 244(e), 8 U.S.C. § 1254(e). Petitioners did not request voluntary departure in the agency proceedings. To qualify for voluntary departure in lieu of deportation, Petitioners must establish that they have exhibited good moral character for at least five years prior to their request. INA § 244(e). In light of the IJ's determination that they had misrepresented their marital status in November 1989, Petitioners assert that they could not have qualified as persons of good moral character under the statute until November 1994, when their appeal was already pending before the Board. *See Cipriano v. INS,* 24 F.3d 763, 764-65 (5th Cir.1994) (holding that time required for relief from deportation continues to accrue during nonfrivolous appeal to BIA).

We do not find that these new circumstances warrant remand. A motion to reopen filed with the BIA is the proper procedure for proffering new evidence pertaining to a request for discretionary relief from deportation. *Faddoul v. INS,* 37 F.3d 185, 190-91 (5th Cir.1994); 8 C.F.R. § 3.2.

## IV

For the foregoing reasons, we AFFIRM the decision of the BIA in all respects.