

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-21-2005

# Hassan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3738

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Hassan v. Atty Gen USA" (2005). *2005 Decisions*. Paper 368.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/368

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  04-3738

MOHAMED AHMED HASSAN,
a/k/a
Mohamed Ahmed Hasan Ghorab,

Petitioner

v.

*ALBERTO R. GONZALES, Attorney General of the United States,

Respondent

*Substituted pursuant to Rule 43c, F.R.A.P.

On Appeal from an Order entered by
The Board of Immigration Appeals
No. A78-832-208

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2005

Before: ALITO, AMBRO, and LOURIE,** Circuit Judges

(Opinion filed:   October 21, 2005)

OPINION

---

    ** Honorable Alan D. Lourie, Circuit Judge for the United States Court of Appeals
for the Federal Circuit, sitting by designation.

AMBRO, <u>Circuit Judge</u>

Mohamed Hassan Ghorab, a citizen of Egypt, petitions for review of a final order of the Board of Immigration Appeals (Board) affirming, without opinion, an Immigration Judge's ruling that Ghorab had waived his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). For the reasons provided below, we deny the petition.

## I. Factual Background and Procedural History

Ghorab initially entered the United States in March, 2000, on a non-immigrant tourist visa. On August 11, 2000, he filed an application to register permanent residence or adjust status (Form I-485). In addition, a petition for alien relative (Form I-130) was filed on his behalf with the appropriate District Director within the Department of Homeland Security (DHS). Both petitions were denied on September 20, 2001. On March 25, 2003, DHS served Ghorab with a Notice to Appear, charging him as removable from the United States under Immigration and Nationality Act (INA) § 237(a)(1)(B), 8 U.S.C. § 1227, for overstaying his tourist visa.

Subsequent to serving him with the Notice to Appear, DHS arrested and detained Ghorab. While in DHS custody, Ghorab was provided a rights warning and he agreed to answer questions. He advised DHS agents that, as an Egyptian imam, he was questioned about terrorism by Egyptian national security officers approximately once a year. Ghorab explained that this procedure was routine for imams in his home country. He further

2

reported that he had never been arrested by law enforcement, he left Egypt due to financial problems, and he believed he would have no trouble returning home. About two months after his arrest, Ghorab filed a second Form I-130 petition, based on an alleged marriage to the same woman as detailed in his first I-130 petition.

Ghorab appeared with counsel before an Immigration Judge (IJ) in Philadelphia, Pennsylvania on June 4, 2003, for the first hearing in his removal proceedings. During that hearing, Ghorab conceded the factual allegations and charge enumerated in his Notice to Appear. Because Ghorab had a second I-130 petition pending, the IJ continued the removal hearing until September 3, 2003. The IJ also ordered Ghorab to file all other relief applications prior to the September hearing.

At the September 3 hearing, the IJ voiced his understanding that Ghorab was not seeking asylum, withholding of removal, or protection pursuant to the CAT. The IJ further communicated that it appeared that Ghorab sought adjustment of status solely through a marriage or religious worker petition. Ghorab's counsel stated that the IJ was correct in his statement of the specific forms of relief sought by his client.

DHS filed a notice of intent to deny Ghorab's Form I-130 petition on September 3. Over a Government objection, the IJ continued the hearing for an adjudication of the notice to deny the I-130. The purpose of the continuance was to provide Ghorab time to file rebuttal evidence to support his petition and to await a final decision on that matter.

On September 24, 2003, Ghorab filed a petition for benefits as a special religious

worker (Form I-360). DHS denied Ghorab's I-130 petition on October 20, 2003 due to a finding of marriage fraud. The marriage fraud determination constituted a statutory bar to Ghorab's Form I-360 petition.

The removal proceedings resumed on December 17, 2003. Ghorab was represented by new counsel. His previous attorney, Joseph Simon, had withdrawn on October 8, 2003. Ghorab's new counsel advised the IJ that he had discussed with his client grounds for seeking asylum. He added that Ghorab had not discussed the possibility of seeking asylum with his previous counsel because, at the time, he had other petitions pending. Counsel further indicated that members of Ghorab's Islamic sect had been arrested in Egypt and Morocco during the summer of 2003 in response to a terrorist bombing in Morocco committed by members of that sect. Counsel made no representation, however, that Ghorab was unaware of those arrests prior to the September 3 hearing. He instead reported that previous counsel had failed to advise Ghorab that the arrests could be used as a basis for an asylum application.

Counsel argued that the arrests showed changed country conditions, and thus Ghorab should be permitted to file asylum and withholding of removal applications. The Government disagreed, maintaining that because the Court had previously ordered Ghorab to file all relief applications by the September 3 hearing, any applications filed subsequent to that date should be deemed waived. The IJ continued the hearing to allow Ghorab to file an affidavit from previous counsel, submit additional filings, and review

4

the tape recordings of the earlier hearings.

On December 30, 2003, the Government filed a motion to deem the filing of Ghorab's application for asylum, withholding of removal, and protection under the CAT waived, citing 8 C.F.R. § 1003.31(c). According to the Government, Ghorab had affirmatively rejected the relief he was now seeking in his September 3 hearing by specifically stating that he was not seeking asylum. Ghorab nonetheless filed an application for asylum during his final removal hearing on January 7, 2004, citing religious persecution and fear of torture as grounds for relief. In support of his petition, Ghorab attached an affidavit in which he made the following claims: he is a member of Dawaa Salafia, a peaceful Islamic sect; Egyptian police took control of his mosque and gave it to their government prior to his arrival in the United States; police had interrogated him on numerous occasions for periods of up to one week; Egyptian national security imprisoned twenty-four sect members in November 2002 and the leader of the sect in December 2002; the Egyptian government detained the sect leader for a lengthy period of time without filing charges; and he and members of the sect had been arrested and harassed by Egyptian police allegedly for being terrorists. Ghorab also filed several documents to support his application, including the Department of State human rights report, several Egyptian newspaper articles, a report by Amnesty International, and an

5

affidavit from his previous counsel, Mr. Simon.[1]

The IJ issued an Order and Findings of Fact on February 23, 2004, granting the Government's motion to deem relief applications waived and ordering Ghorab removed to Egypt. Ghorab timely appealed to the Board, which affirmed the decision without opinion. This appeal followed.

## II. Jurisdiction and Standard of Review

We have jurisdiction to review final decisions of the Board under Section 242(b) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252(a)(1). *See Smriko v. Ashcroft*, 387 F.3d 279, 282 (3d Cir. 2004). The Board's jurisdiction arose under 8 C.F.R. § 1003.1(b)(3). Venue is proper because the proceedings occurred in Philadelphia, Pennsylvania. INA § 242(b)(2); 8 U.S.C. § 1252(b)(2).

Although we generally review orders of the BIA, *Abdulai v. Ashcroft*, 239 F.3d 542, 548-49 (3d Cir. 2001), we also review IJ orders if the BIA affirms without opinion. *See Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003) (*en banc*). We review factual findings under a substantial evidence standard. *See* 8 U.S.C. § 1252(b)(4)(B) (codifying *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992)). Legal determinations are reviewed *de novo*. *Smriko*, 387 F.3d at 282 (3d Cir. 2004) (quoting *Wang v. Ashcroft*, 368 F.3d

---

[1]Simon testified that, although Ghorab was beyond the one-year deadline for filing an asylum application, he had questioned his client about a potential asylum claim. He further declared that he did not pursue any asylum claim because he had no information to support such an application.

347, 349 (3d Cir. 2004)).

## III.  Discussion

Ghorab contends he did not waive his right to apply for asylum because the IJ

failed to impose a firm deadline for filing additional applications for relief.  Immigration

judges are entitled to establish and enforce deadlines in immigration proceedings.

Pursuant to 8 C.F.R. § 1003.31(c), an

> . . . [i]mmigration Judge may set and extend time limits for the filing of
> applications and related documents and responses thereto, if any.  If an application
> or document is not filed within the time set by the Immigration Judge, the
> opportunity to file that application or document shall be deemed waived.

Because an IJ's decision regarding waiver is discretionary, it is reviewed for an abuse of

discretion.  *See Witter v. INS*, 113 F.3d 549, 55-56 (5th Cir. 1997).  The IJ's decision will

not be disturbed unless it is "arbitrary, irrational, or contrary to law."  *Tipu v. Immigration*

*& Naturalization Serv.*, 20 F.3d 580, 582 (3d Cir. 1994)).

The IJ established September 3, 2003, as the filing deadline for all applications of

relief during the Master Calendar hearing on June 4, 2003, when he instructed that

> [b]y the next hearing, the respondent is due to file *any relief applications that he*
> *believes he would be eligible to*, depending on what happens with the I-130, unless
> there is an I-360 pending with regard to religious work, then the Court would want
> proof of that.  But, in any event, we will meet again on September 3, 2003, on my
> afternoon docket.  If there is an adjudication on the I-130 before that date, please
> inform the Court.

App. at 177 (emphasis added).  Ghorab contends the IJ was merely discussing an

adjustment of status application during this exchange.  Such an interpretation, however,

7

glosses over the IJ's mandate to submit "any relief applications that [Ghorab] believes he would be eligible to." *Id*. Ghorab's argument is further belied by a discussion that occurred between the IJ and the parties at the September 3 hearing. During that hearing, the IJ specifically confirmed that the only relief Ghorab sought was the Form I-130 petition and possibly a Form I-360 petition. *Id*. at 181. Indeed, as the following exchange makes clear, the IJ expressly queried whether Ghorab intended to file an asylum application:

> [Q]: It is my understanding, Mr. Simon, as an officer of the Court your client is seeking adjustment of status, either through the marriage or through a religious worker petition, if such a petition were to be approved, and that he is not seeking asylum, withholding of removal, or withholding under the Convention Against Torture. Is that correct?
> [A]: That's my understanding, Your Honor.

*Id*. Thus, the record establishes that the IJ did not abuse his discretion by enforcing the September 3 deadline for filing any relief applications, including a petition for asylum. Even assuming, for the sake of discussion, Ghorab is correct that the IJ's directives failed to establish a firm deadline of September 3 for filing all applications for relief, the District Court did not err in denying his asylum petition because, in any event, it was time-barred by statute. *See* 8 U.S.C. § 1158(a)(2)(B).

We are also unpersuaded by Ghorab's argument that the IJ was compelled to allow him to file his asylum application late due to changed country conditions. As noted above, an alien must prove that he filed his asylum application within one year of arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). However, if the alien can establish that

there are "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application," failure to file the application within the one year period may be excused. 8 U.S.C. § 1158(a)(2)(D). The plain language of the statute demonstrates that the "changed circumstances" exception applies to the one-year statute of limitations delineated in Section 1158(a)(2)(B), not to IJ-imposed time limits falling well after the one year period has expired. Thus, Ghorab's reliance on the changed circumstances exception is ill-placed.

Moreover, even if the exception did apply here, Ghorab failed to present sufficient evidence of changed conditions in Egypt to warrant a late filing of his asylum application. Indeed, Ghorab's asylum petition and claim for protection under the CAT were based entirely on events that took place well in advance of the September 3 filing deadline. As such, they cannot constitute changed country conditions. In sum, the record establishes that the IJ properly exercised his discretion under the immigration regulations to enforce the deadline he set for filing "any relief applications" and that decision was bolstered by record evidence demonstrating that Ghorab's new circumstances long predated his removal proceedings. Accordingly, Ghorab has not shown that the IJ's discretionary decision was somehow arbitrary, irrational, or contrary to law. *See Tipu*, 20 F.3d at 582.

Ghorab also contends that he was denied due process because his counsel was ineffective. "To advance a successful claim for ineffective assistance of counsel, an alien

9

must demonstrate prejudice – he 'must show that he was prevented from reasonably presenting his case.'" *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 377 (3d Cir. 2002) (citing *Uspango v. Ashcroft*, 289 F.3d 226, 231 (3d Cir. 2002)). Ghorab has not met this burden. The record makes clear that there was no evidence on which Ghorab's counsel could have properly relied as the basis for an asylum application. Simply stated, Ghorab failed to file an asylum application within the limitations period and cannot prove changed country conditions that would warrant an exception from the statutory time bar. Because counsel's failure to petition for asylum did not prejudice Ghorab, his ineffectiveness claim must fail.

Ghorab's final argument is that the IJ improperly made credibility determinations without making specific findings and citing reasons. It is certainly the law of our Circuit that, when making credibility determinations, an IJ must state specific and cogent reasons. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). Contrary to Ghorab's contentions, there is nothing in the record to suggest the IJ made any credibility determinations. Rather, he decided Ghorab's ineffective assistance of counsel claim on the merits. That is, the IJ ruled that, even if everything Ghorab claimed in his affidavit was true, he still could not prevail on the merits because there was insufficient evidence to support an asylum petition.

\* \* \* \* \*

For the reasons provided above, we deny Ghorab's petition for review.

10